**FILED**

March 18 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 06-0109

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 90

CHAD UPKY,

       Plaintiff,

  v.

MARSHALL MOUNTAIN, LLC,

       Defendant,

  and

MARSHALL MOUNTAIN, LLC,

       Third-Party Plaintiff and Appellant,

  v.

BOARD OF MISSOULA, INC. and
BOARD OF MISSOULA, LLC,

       Third-Party Defendants and Appellees.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV 02-112
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Gig A. Tollefsen, Berg, Lilly & Tollefsen, P.C., Bozeman, Montana

      For Appellees:

          Maxon R. Davis, Davis, Hatley, Haffeman & Tighe, Great Falls, Montana

Submitted on Briefs:  May 16, 2007
Decided:  March 18, 2008

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Third-party plaintiff Marshall Mountain, LLC (Marshall Mountain) appeals from a judgment entered in the Fourth Judicial District Court, Missoula County, in favor of third-party defendants Board of Missoula, Inc. and Board of Missoula, LLC (Board of Missoula), dismissing its third party complaint after a jury verdict in Board of Missoula's favor.

¶2     We restate and address the issues on appeal as follows:

¶3     1. Did the District Court err when it granted Board of Missoula's motion to amend its answer to allege comparative negligence by Chad Upky?

¶4     2. Was the jury's verdict that Board of Missoula was not negligent supported by substantial credible evidence?

## BACKGROUND

¶5     On February 12, 1999, eighteen year old Chad Upky was rendered a paraplegic in a skiing accident at Marshall Mountain ski area. The injuries occurred when Upky skied over a ski jump ramp constructed at Marshall Mountain for use in an upcoming snowboard competition. Upky became inverted when he skied over the jump and was injured when he landed.

¶6     Board of Missoula was a local snowboard shop that in the years before Upky's accident had worked with Marshall Mountain to construct jumps for use in snowboard competitions at the ski area. In prior years, the jumps had been constructed up to two weeks before the competition and had remained open for use by skiers at Marshall Mountain. In 1999, Marshall Mountain's owner, Bruce Doering, and Board of Missoula's co-owner, Wright Hollingsworth, agreed to construct a jump for use in that year's competition. The ski

jump on which Upky was injured was constructed two days before the accident. Doering later claimed, on behalf of Marshall Mountain, that he understood the jump would be open for use before the February 1999 competition. To the contrary, Hollingsworth asserted that he and Doering had agreed the jump would be closed prior to the 1999 competition.

¶7    On Wednesday, February 10, 1999, before the snowboard competition scheduled for the next Saturday, Hollingsworth went to Marshall Mountain after the ski area closed for the evening and built the jump with the help of Marshall Mountain's snowcat operator, Tyson Miller. Miller and Hollingsworth worked on the jump from about 10:00 p.m. Wednesday night until 2:00 a.m. the next morning. Hollingsworth later said that he wanted to hand finish the jump in the daylight using shovels. It was his opinion that the jump should not be opened for use until it was finished. He said that before he left early Thursday morning he laid bamboo poles across the jump to indicate that it was closed. Hollingsworth said that he believed the ski patrol would see the bamboo poles when they inspected the area in the morning and would keep the jump closed. Later, members of the ski patrol and other employees of Marshall Mountain disagreed about whether there were bamboo poles across the jump on Thursday morning.

¶8    No matter whether Hollingsworth had marked the jump as closed with bamboo poles, the jump was open for use by skiers and snowboarders that Thursday and again on Friday. Doering and the ski patrol examined the jump, and it was left open for skiers and snowboarders. Doering stated that he had ultimate authority on whether or not to allow Marshall Mountain patrons to use the jump. Several employees of Marshall Mountain used the jump with no problem.

3

¶9     On Friday, the day of Upky's accident, the jump was open throughout the day. Late in the day, a Marshall Mountain employee suggested to Doering that they close the jump due to changing snow and lighting conditions. However, Doering decided to keep the jump open. Chris Laws, Board of Missoula's retail manager, was at Marshall Mountain on Friday. He noticed the jump was open, even though he understood it was supposed to be closed.

¶10    On Friday evening, Upky and some friends approached the jump. Upky claimed that he tried to slow himself going into the jump by snowplowing with his skis and went over the jump at a controlled speed. Other witnesses to the accident, including Doering and Laws, stated the Upky "bombed" the jump by going into it extremely fast. Upky suffered severe injuries as a result of his fall, including a broken neck that resulted in his paraplegia.

¶11    In 2002, Upky brought suit against Marshall Mountain, alleging that its negligence was the cause of his injuries. Upky made no claim against Board of Missoula. In its answer, Marshall Mountain denied any negligence and asserted affirmative defenses, including Upky's comparative negligence. Marshall Mountain filed a third-party complaint against Board of Missoula seeking contribution or indemnification, asserting that Board of Missoula was responsible for any negligence in the construction of the jump. In its answer, Board of Missoula denied it had been negligent and went on to claim that the jump was unfinished when Upky used it and that it had cordoned off the jump to prevent its use prior to the competition, but Marshall Mountain negligently allowed the use of the jump on the day of Upky's accident. Subsequently, Board of Missoula, in response to a request for admission, admitted that it had left the jump in an unfinished condition and that it was dangerous. However, it qualified the admission to state that the actions of Marshall Mountain in

4

removing the bamboo poles marking the jump closed and allowing its patrons to use the jump were careless and caused Upky's injuries.

¶12 Following discovery, Board of Missoula moved for summary judgment, arguing that it was not negligent as a matter of law. The District Court denied the motion for summary judgment in November 2003.

¶13 In December 2003, Marshall Mountain and Upky settled Upky's claim. In March 2004, the District Court noted that because of the settlement only Marshall Mountain's claims against Board of Missoula remained to be litigated; Upky's claims against Marshall Mountain were later dismissed.

¶14 In July 2004, Board of Missoula moved to amend its answer, pursuant to M. R. Civ. P. 15(a), to include a claim that Upky's negligence, in combination with that of Marshall Mountain, caused his injuries, and to have the jury determine the extent of his negligence as a non-party under § 27-1-703, MCA. Board of Missoula's amended answer reasserted the claim in the original answer that Board of Missoula was not negligent and Marshall Mountain was negligent for allowing skiers to use the unfinished jump. The amended answer only added the assertion that both Upky and Marshall Mountain caused or contributed to the damages alleged by Upky. Board of Missoula did not attempt to withdraw its admission that the jump was dangerous. Marshall Mountain opposed the motion, arguing that it came too late and the amendment adding a claim of comparative negligence by Upky would be unfairly prejudicial. The District Court granted the motion to amend.

¶15 A jury trial on the third-party complaint began December 5, 2005. At trial, numerous witnesses provided conflicting evidence on the events surrounding Upky's injuries. The

5

witnesses' testimony varied widely on whether Doering and Hollingsworth had agreed to close the jump prior to the competition, whether Hollingsworth placed bamboo poles on the jump, and how dangerous, if at all, the jump was for skiers and snowboarders. There was also conflicting evidence regarding the exact circumstances of Upky's fall, specifically how far away he was when he began approaching the jump and how fast he went over the jump.

¶16 The special verdict form submitted to the jury first instructed it to determine if Board of Missoula was negligent. Only if the jury found that Board of Missoula was negligent was it to decide if Upky and Marshall Mountain were also negligent and fix the percentages of negligence. The jury returned its verdict finding that Board of Missoula was not negligent. Thus, it did not apportion fault. The District Court entered a final judgment in favor of Board of Missoula. Marshall Mountain appeals.

## DISCUSSION

¶17 **Issue 1: Did the District Court err when it granted Board of Missoula's motion to amend its answer to allege comparative negligence by Chad Upky?**

¶18 The Montana Rules of Civil Procedure provide for amendments to pleadings:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

6

M. R. Civ. P. 15(a). While amendments are not permitted in every circumstance, we have emphasized that, as Rule 15(a) states, leave to amend should be "freely given" by district courts. *Loomis v. Luraski*, 2001 MT 223, ¶ 41, 306 Mont. 478, ¶ 41, 36 P.3d 862, ¶ 41. District courts should permit a party to amend the pleadings when, inter alia, allowing an amendment would not cause undue prejudice to the opposing party. *Prentice Lumber Co. v. Hukill*, 161 Mont. 8, 17, 504 P.2d 277, 282 (1972) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)).

¶19    Marshall Mountain claims it was prejudiced by the amendment to the pleadings which allowed the jury to consider Upky's negligence. However, the jury heard all of the evidence concerning the actions of Board of Missoula presented by Marshall Mountain, which included the admission that the jump was dangerous, and nevertheless determined that Board of Missoula was not negligent. Thus, it did not reach the question of whether Upky was negligent. As the jury did not consider any negligence on the part of Upky in reaching its verdict, there was no prejudice to Marshall Mountain. When a special verdict requires a jury to answer a question only if it first determines that a predicate question is answered in the affirmative, and the jury answers the predicate question in the negative, we have consistently held that the party objecting to the submission of the second, unanswered question is not prejudiced. Under such circumstances we consider any error harmless, and decline to interfere with the jury's decision. *See e.g. Payne v. Knutson*, 2004 MT 271, ¶¶ 17-18, 323 Mont. 165, ¶¶ 17-18, 99 P.3d 200, ¶¶ 17-18 (concluding there was no prejudice to the plaintiff where the jury was not instructed to apportion negligence among the defendants because the jury found the plaintiff was more than 50% negligent and thus could not

7

recover); *Peschke v. Carroll College*, 280 Mont. 331, 343, 929 P.2d 874, 881 (1996) (concluding that although a district court erred in admitting a videotape, it went to the issue of causation, which the jury did not reach, and the error was thus harmless); *Drilcon, Inc. v. Roil Energy Corp.*, 230 Mont. 166, 173, 749 P.2d 1058, 1062 (1988) (declining to address appellant's argument that the special verdict form erroneously included non-parties because the jury apportioned negligence only among the parties to the action and appellant was not prejudiced).

¶20    We affirm the District Court's order allowing Board of Missoula to amend the pleadings to allege Upky's comparative negligence because Marshall Mountain was not prejudiced by it and any error was harmless.


¶21    **Issue 2: Was the jury's verdict that Board of Missoula was not negligent supported by substantial credible evidence?**

¶22    This Court does not review a jury verdict to determine if it was correct.  We review a jury's decision only to determine if substantial credible evidence in the record supports the verdict.  *Campbell v. Canty*, 1998 MT 278, ¶ 17, 291 Mont. 398, ¶ 17, 969 P.2d 268, ¶ 17; *Wise v. Ford Motor Co.*, 284 Mont. 336, 343, 943 P.2d 1310, 1314 (1997).  Substantial evidence is "evidence that a reasonable mind might accept as adequate to support a conclusion" and may be less than a preponderance of the evidence but must be more than a "mere scintilla." *Campbell*, ¶ 18.

¶23    It is the role of the jury to determine the weight and credibility of the evidence, and this Court will defer to the jury's role. *Seeley v. Kreitzberg Rentals, LLC*, 2007 MT 97, ¶ 21,

8

337 Mont. 91, ¶ 21, 157 P.3d 676, ¶ 21, *overruled on other grounds*, *Giambra v. Kelsey*, 2007 MT 158, ¶ 27, 338 Mont. 19, ¶ 27, 162 P.3d 134, ¶ 27. We view the evidence in the light most favorable to the prevailing party. Where conflicting evidence exists, we will not overturn a jury's decision to believe one party over another. *Samson v. State*, 2003 MT 133, ¶ 11, 316 Mont. 90, ¶ 11, 69 P.3d 1154, ¶ 11.

¶24 The record before us demonstrates that substantial credible evidence supports the jury's verdict that Board of Missoula was not negligent. Hollingsworth testified that he and Doering agreed the jump would be closed prior to the competition. Hollingsworth also testified that he had marked the jump closed with bamboo poles the night it was constructed, and other testimony supported this assertion. There was also evidence that only Marshall

Mountain had the ultimate decision-making authority to open or close the jump. Marshall Mountain's manager, Doering, testified he inspected the jump and thought it was safe. This evidence, which does not include the testimony describing Upky's actions, provided the jury with an adequate basis to support its decision that Board of Missoula was not negligent. *Campbell*, ¶ 18.

¶25 There is also evidence which would tend to show Board of Missoula was negligent. However, because the evidence is conflicting we defer to the jury's determination as to which evidence is more credible. *Seeley*, ¶ 21. We conclude that the record contains sufficient evidence for reasonable minds to conclude that Board of Missoula was not negligent.

## CONCLUSION

¶26 The District Court did not err when it permitted Board of Missoula to amend its answer, and the jury verdict is supported by substantial credible evidence.

¶27 Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ JIM RICE
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS