FILED

June 27 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 13-0609

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 166

DONNA PICKETT,

      Plaintiff and Appellee,

  v.

FLORIAN M. CORTESE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte/Silver Bow, Cause No. DV 10-202KK
Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Travis Dye, Gary Kalkstein; Kalkstein, Johnson & Dye, PC; Missoula,
Montana

      For Appellee:

          Dennis P. Conner; Keith D. Marr; Conner & Marr, PLLP; Great Falls,
Montana

Submitted on Briefs:  April 30, 2014
Decided:  June 27, 2014

Filed:

_____
                  Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Florian Cortese, M.D., appeals the September 9, 2013 order of the Second Judicial District Court, Silver Bow County, denying Cortese's motion to dismiss plaintiff Donna Pickett's complaint for lack of subject matter jurisdiction, denying Cortese's motion to preclude Pickett from presenting unpleaded claims at trial, and denying Cortese's motion for summary judgment.

¶2 We address the following issues on appeal:

¶3 *1. Whether the District Court erred when it determined that it had jurisdiction to consider arguments that Pickett had not specifically presented to the Montana Medical Legal Panel.*

¶4 *2. Whether this Court should suspend the Rules of Appellate Procedure to consider the District Court's decisions allowing Pickett to present unpleaded claims at trial and denying Cortese's motion for summary judgment.*

¶5 We affirm the District Court's determination that it had jurisdiction to decide Pickett's claims. We decline to suspend the Rules of Appellate Procedure to consider the other issues raised by Cortese.

## PROCEDURAL AND FACTUAL BACKGROUND

¶6 On January 18, 2007, Cortese performed an endoscopic retrograde cholangiopancreatography (ERCP) with sphincterotomy on Donna Pickett. During the course of the procedure, the first section of Pickett's small intestine was perforated. As a result, Pickett developed pancreatitis, which became septic. Pickett underwent extensive medical care and incurred significant expense to address these complications.

2

¶7 On January 15, 2010, Pickett filed a claim for review with the Montana Medical Legal Panel (MMLP). She asserted claims of medical malpractice against Cortese stemming from the 2007 procedure. Pickett alleged that Cortese was negligent in three ways: (1) in negligently perforating her intestine; (2) in failing to timely diagnose the perforation; and (3) in failing to disclose all material facts and the nature of significant risks that may be encountered so that necessary consent to treatment could be based on an intelligent exercise of judgment.

¶8 Following the MMLP's confidential decision, Pickett filed a complaint before the Second Judicial District Court. The complaint alleged that Cortese breached his duty of care in numerous ways, including "carelessly, unskillfully, and negligently perforating [Pickett's] duodenum; failing to timely diagnose and treat [her] perforation; failing to disclose all material facts and the nature of significant risks that may be encountered so that necessary consent to treatment could be based on an intelligent exercise of judgment; failing to employ appropriate after-care or post-operative management; and failing to otherwise use that degree of care and skill required of physicians practicing in Dr. Cortese's specialty . . . ."

¶9 Cortese asked Pickett in written discovery to list and explain every distinct action or omission that constituted a departure from the standard of care. Pickett replied with the allegations from her complaint and stated that she would supplement her answer with her expert witness disclosures. On June 3, 2013, Pickett served her expert disclosure identifying three experts who would offer standard of care opinions. Pickett's experts

opined that Cortese did not obtain all necessary data before recommending and performing the ERCP or sphincterotomy and that he should have managed her care with more conservative, alternative measures.

¶10 On July 25, 2013, Cortese moved to dismiss Pickett's claims that Cortese "performed an unnecessary procedure and failed to disclose that less-invasive alternatives were available." Cortese argued that these claims were not presented to the MMLP, so the District Court lacked subject matter jurisdiction to consider them. After briefing and argument, the court denied Cortese's motion to dismiss. It determined that "[p]art of the standard of care analysis concerns whether or not the procedure should have been performed at all," and that Cortese "presented an expert's report addressing this exact issue" to the MMLP. In the same order, the Court denied Cortese's motions for summary judgment and to preclude unpleaded claims from being presented at trial.

## STANDARD OF REVIEW

¶11 A district court's decision to grant or deny a motion to dismiss for lack of subject matter jurisdiction is a question of law that we review for correctness. *Ballas v. Missoula City Bd. of Adjustment*, 2007 MT 299, ¶ 9, 340 Mont. 56, 172 P.3d 1232. "The inquiry is whether the complaint states facts that, if true, would grant the district court subject matter jurisdiction." *Ballas*, ¶ 9. Denial of a motion to dismiss for lack of subject matter jurisdiction is reviewable prior to final judgment. M. R. App. P. 6(3)(c). We are confined to whether the district court correctly decided the limited question of subject matter jurisdiction. *Ballas*, ¶ 9.

4

¶12    *1. Whether the District Court erred when it determined that it had jurisdiction to consider arguments that Pickett had not specifically presented to the Montana Medical Legal Panel.*

¶13    Any person alleging malpractice against a health care provider must submit a claim to the MMLP before filing a complaint in district court.  Section 27-6-301, MCA.  With few exceptions, none applicable here, the panel is required to review all malpractice claims against health care providers.  Section 27-6-105, MCA.  The application to the MMLP must contain "a statement in reasonable detail of the elements of the health care provider's conduct that are believed to constitute a malpractice claim, the dates on which the conduct occurred, and the names and addresses of all physicians . . . and hospitals having contact with the claimant and all witnesses."  Section 27-6-302(1), MCA.

¶14    In her MMLP filing, Pickett did not expressly allege that Cortese should have explored alternative treatment and that he unnecessarily performed the ERCP.  Cortese contends that Pickett failed to meet the statutory requirement to bring this claim to the MMLP before filing it with the District Court.  Pickett responds by arguing that this claim is included within two issues she presented to the MMLP—whether Cortese negligently operated on her and whether Cortese failed to obtain informed consent.

¶15    We have not previously addressed the specificity of pleading required before the MMLP.  Cortese urges us to adopt the rule from two administrative law cases in which we held that an issue not squarely raised, argued or adjudicated in the administrative context is not ripe for consideration in a judicial review proceeding.  *Art v. Mont. Dept. of*

*Labor & Indus. ex. rel. Mason*, 2002 MT 327, ¶ 14, 313 Mont. 197, 60 P.3d 958; *Marble v. Mont. Dept. of Health & Human Servs.*, 2000 MT 240, ¶ 28, 301 Mont. 373, 9 P.3d 617. Pickett distinguishes these cases because the standard of review that the trial court utilizes in an administrative law action differs from a medical malpractice claim. Trial courts review administrative decisions to determine whether the agency "exceeded its authority, abused its discretion, made clearly erroneous findings of fact, or interpreted the law incorrectly." *Marble*, ¶ 15. In contrast, filing a claim with the MMLP is simply a condition precedent to filing a medical malpractice action in district court.

¶16    We agree with Pickett that *Art* and *Marble* have no application here because both involve judicial review of an agency decision under the Montana Administrative Procedure Act. A proceeding before the MMLP, however, results in no record and no agency decision presented to the court for review. "The panel's decision is without administrative or judicial authority and is not binding upon any party." Section 27-6-606(1), MCA. The decision and reasoning of the panel are confidential and cannot be used as evidence in an action filed in court. Sections 27-6-703, -704, MCA. A district court presented with a medical malpractice claim analyzes that claim anew rather than relying on any finding made by the MMLP.

¶17    Nevertheless, there must be some relationship between a claim filed with the MMLP and a complaint filed in district court. Submitting a claim for evaluation by the MMLP is a condition precedent to commencing a medical malpractice action. *Linder v. Smith*, 193 Mont. 20, 629 P.2d 1187 (1981). A "claim" must include "reasonable detail

6

of the elements of the health care provider's conduct that are believed to constitute a malpractice claim." Section 27-6-301, MCA. The essence of Pickett's claim against Cortese is that he failed to meet the standard of care in performing the January 18, 2007 ERCP. This claim was submitted to the MMLP before Pickett commenced her district court action. The District Court's subject matter jurisdiction is based on its "fundamental authority to hear and adjudicate cases" of medical malpractice. *BNSF Ry. Co. v. Cringle*, 2010 MT 290, ¶ 15, 359 Mont. 20, 247 P.3d 706. The issue is whether the elements of Pickett's malpractice complaint were sufficiently presented before the panel in order to satisfy the condition precedent to filing in court.

¶18 Although the scope of a claim before the MMLP was not at issue, our decision in *Griffin v. Moseley*, 2010 MT 132, 356 Mont. 393, 234 P.3d 869, is therefore instructive. Griffin's complaint alleged that her doctor was negligent and that his actions fell below the standard of care. *Griffin*, ¶ 37. The complaint contained only two claims against Moseley: "(1) negligence during the performance of the surgery; and (2) failure to obtain informed consent prior to surgery." *Griffin*, ¶ 16. We determined that the District Court construed those claims too narrowly when it did not allow Griffin to argue that the doctor failed to attempt alternative pre-surgical treatment. *Griffin*, ¶ 39. In light of the allegations of the complaint and the deposition testimony of Griffin's experts, we held that the doctor was on notice that the plaintiff claimed he was negligent "in both his surgical treatment of [Griffin], as well as in his pre-surgical treatment of her." *Griffin*, ¶ 39.

¶19   *Griffin* is useful here for its discussion regarding what a general claim for negligence encompasses.   A claimant before the MMLP is required to provide only "reasonable detail" of the elements of her claim.   Section 27-6-301, MCA.   The requirement that a claimant first file a claim with the MMLP exists to avoid litigation where possible.   Section 27-6-102, MCA.   Filing with the MMLP is just the first step in a medical malpractice case, occurring well before the conduct of any discovery, the substantial involvement of experts or the full development of legal theories.   As such, "reasonable detail" of a party's claim cannot be expected to include each and every theory that may come to fruition after discovery occurs.   For these reasons, we decline to impose Cortese's suggested heightened pleading standard for "reasonable detail."   The notice requirement we utilized in *Griffin* applies a standard that is equally workable in the analysis of a claim before the MMLP.

¶20   In her filing with the MMLP, Pickett alleged that Cortese negligently performed the ERCP and failed to provide her with sufficient information to enable her informed consent.  Pickett's expert disclosure alleged that Cortese failed to obtain all relevant data, failed to explore alternative solutions and performed the ERCP unnecessarily.   Both allegations arise out of the same procedure and are premised on Cortese's alleged failure to meet the standard of care in performing that procedure.   Like *Griffin*, Pickett's claim that Cortese failed to consider alternative treatment before performing the ERCP properly may be subsumed into her claims that Cortese negligently performed the ERCP and failed to get informed consent.   Further, as the District Court noted, Cortese presented an

8

expert's report to the MMLP that spoke to the necessity of the procedure. Cortese reasonably was on notice of Pickett's claims and had the opportunity to conduct additional discovery once Pickett's expert disclosure was served. Under these facts, the District Court correctly determined that Pickett's claim to the MMLP was sufficient to encompass her claims before the court. Accordingly, we affirm its decision denying Cortese's motion to dismiss for lack of subject matter jurisdiction.

¶21 *2. Whether this Court should suspend the Rules of Appellate Procedure to consider the District Court's decisions allowing Pickett to present unpleaded claims at trial and denying Cortese's motion for summary judgment.*

¶22 Cortese requests that we consider ruling on two further interlocutory orders—the District Court's denial of his motion for summary judgment and its denial of his motion to exclude unpleaded claims at trial. Unlike a court's decision on a motion to dismiss for lack of subject matter jurisdiction, these orders are not appealable until after final judgment. M. R. App. P. 6(5).

¶23 Nevertheless, Cortese asks us to exercise our authority under M. R. App. P. 29 to suspend the requirements of these rules "[i]n the interest of expediting decision . . . or for other good cause shown." Cortese points out that we have suspended the Rules in the interest of judicial economy. *See Durden v. Hydro Flame Corp.*, 1998 MT 47, ¶¶ 17-19, 288 Mont. 1, 955 P.2d 160. In *Durden*, we faced one of a "limited class of cases" where a party appeals an order granting a motion for judgment as a matter of law and an order granting a new trial on damages. *Durden*, ¶ 19. Because the order granting a new trial was appealable, we chose to also consider the order granting judgment as a matter of law

to "save the necessity either for a second appeal or a second trial," an outcome we characterized as a "near certainty." *Durden*, ¶ 19. Here, there has been no trial, and there is no "near certainty" of a second appeal. "In the absence of extraordinary and compelling circumstances beyond simply requiring a party to proceed to trial," we have declined to review orders denying summary judgment before the entry of final judgment. *State ex rel. Kosena v. Dist. Ct.*, 172 Mont. 21, 22, 560 P.2d 522, 523 (1977). Cortese has not presented any compelling reason necessitating review of these pretrial rulings, and, consistent with our Rules of Appellate Procedure, we decline to address them.

## CONCLUSION

¶24 The District Court's order denying Cortese's motion to dismiss for lack of subject matter jurisdiction is affirmed. The case is remanded to the District Court for further proceedings.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JIM RICE


Justice Jim Rice, specially concurring.

¶25 The Court relies heavily upon *Griffin v. Moseley*, 2010 MT 132, 356 Mont. 393, 234 P.3d 869, a case in which I dissented. *See* Opinion, ¶¶ 18-20. *Griffin* is now governing authority and, further, my dissent there was concerned with the subsidiary

question of whether the Plaintiff's expert witness was qualified to testify concerning a neurosurgeon's standard of care, not the adequacy of Plaintiff's pleadings. *See Griffin*, ¶¶ 41-46 (J. Rice, dissenting). Therefore, I concur.

/S/ JIM RICE