DA 08-0575

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 302

IN RE THE MARRIAGE OF:

GINGER L. CAMERON,

       Petitioner and Appellee,

  and

JEFFERY W. CAMERON,

       Respondent and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                  In and For the County of Flathead, Cause No. DR-04-054(B)
                  Honorable Katherine R. Curtis, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Michael Keedy; Henning & Keedy, Kalispell, Montana

      For Appellee:

           Peter F. Carroll; Attorney at Law, Kalispell, Montana

                        Submitted on Briefs:  July 15, 2009

                                   Decided:  September 15, 2009

Filed:

            _____
                             Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Appellant Jeffrey Cameron (Jeff) appeals from the Findings of Fact, Conclusions of Law, and Decree of Dissolution entered by the Eleventh District Court. We affirm.

¶2     This Court considers the following issues on appeal:

¶3     I.   Did the District Court err in identifying the Truman Creek property, in its entirety, as a marital asset?

¶4     II.   Did the District Court err in awarding attorney fees to Ginger Cameron (Ginger)?

¶5     III.   Did the District Court err in categorizing Ginger's assets as not income-producing in its decision to award maintenance?

¶6     IV.  Is Ginger entitled to attorney fees on appeal?

## BACKGROUND

¶7     This case arises from the marriage and subsequent divorce of Jeffrey and Ginger Cameron.  During their marriage, the parties acquired several properties, including 80 acres near Kila, Montana.  The property is comprised of three parcels, collectively referred to as the Truman Creek property.  When the contract on the property was paid in full, the deed was recorded naming Jeff and Ginger as joint owners.  In 1991, at a time when the parties had temporarily separated, Ginger executed a quitclaim deed to the property in favor of Jeff.  The parties eventually reconciled, but the property remained in Jeff's name.  Jeff's father, Earl Cameron (Earl), contributed to the development of the property, building a road and installing power and phone service.  The District Court determined the improvements were worth $25,000.  Jeff testified that his father

2

contributed annually to a portion of the property payments, while Jeff made the remainder of the payments. Jeff claimed he could never have purchased the property without his father's financial help and the use of Earl's equipment to remove gravel from the property, which he then sold. Jeff claims he and his father entered an informal agreement to sell the property and share the profits. There is no written documentation of this agreement.

¶8 The parties separated for the final time in January 2006. Ginger left the home with few financial resources. She was primarily a homemaker during the parties' marriage. She does not have a high school education or GED but has a limited number of college credits. Ginger has been diagnosed with bi-polar disorder, and in July of 2006 admitted herself to a treatment center. The District Court found that Ginger suffers from a mental disability which renders her unable to obtain meaningful, immediate employment. Ginger reported her monthly needs, including medical care, at $2,300. Jeff operates several businesses, including Smith Valley Shale and Excavating, The Sandman, and Master Blaster. He estimated his monthly living expenses at $3,657, a number decreased by the court to $2,800 after removing duplicate or unreasonable expenses. Jeff owns several vehicles and pieces of business equipment.

¶9 On October 29, 2007, the District Court issued its Findings of Facts, Conclusions of Law, and Decree of Dissolution. The court identified the Truman Creek property as marital property and ordered Jeff to pay Ginger $750 in monthly maintenance until two conditions are met: the Somers property is sold and Ginger obtains further education to

secure appropriate employment to meet her needs. In its April 18, 2008 Order, the District Court directed Jeff to pay Ginger's attorney fees. Jeffrey Cameron appeals.

## STANDARD OF REVIEW

¶10 We review a district court's Findings of Facts to determine whether they are clearly erroneous. *Crone v. Crone*, 2003 MT 238, ¶ 16, 317 Mont. 256, 260, 77 P.3d 167, 171. Findings of Fact are clearly erroneous if they are not supported by substantial evidence, the court misapprehends the effect of the evidence, or this Court's review of the record convinces it a mistake has been made. *In re Marriage of Toavs*, 2002 MT 230, ¶ 23, 311 Mont. 455, 461, 56 P.3d 356, 360. If the Findings of Fact are not clearly erroneous, we review the District Court's final award decision for abuse of discretion to determine whether the trial judge acted arbitrarily without employment of conscientious judgment or has exceeded the bounds of reason resulting in substantial injustice. *In re Marriage of Toavs*, ¶ 23. An award of attorney fees is reviewed for abuse of discretion. *In re Marriage of Lee*, 282 Mont. 410, 423, 938 P.2d 650, 658 (1997).

## DISCUSSION

¶11 *Did the District Court err in identifying the Truman Creek property, in its entirety, as a marital asset?*

¶12 Jeff contends that only 40 of the 80 acres of the Truman Creek property should have been identified as marital property because the property is an asset of a partnership between Jeff and his father, Earl. Jeff argues that he and his father developed an informal partnership, invested money and labor in the property, and had planned to sell the estate and split the profits. Ginger contends the Truman Creek property was the parties'

4

retirement asset and, under law, was acquired by the parties alone. The District Court determined that the entire property was a marital asset, with Jeff's portion reduced by $25,000 in light of Earl's contributions to the property. We affirm.

¶13 The District Court's findings are clearly erroneous if they are not supported by substantial evidence, the court misapprehends the effect of the evidence, or this Court's review of the record convinces it a mistake has been made. *In re Marriage of Toavs*, ¶ 23. None of these justifications apply.

¶14 When the contract on the property was paid in full, the deed was recorded naming Jeff and Ginger as joint owners. Following Ginger's quitclaim in 1991, the property remained in Jeff's name alone. While Jeff claims that he and his father agreed to purchase the land together, the District Court determined there is no formal documentation, no registration with the State of Montana, and no partnership tax returns filed in their names. There is evidence, however, that Earl was responsible for building a road and installing power and phone facilities on the property. The District Court determined these contributions were worth approximately $25,000, an amount that should be deducted from Jeff's portion of the marital property as debt owed to Earl. In light of the above evidence, the District Court properly identified all 80 acres as a marital asset, with an adjustment for Earl's contributions.

¶15 *Did the District Court err in awarding attorney fees to Ginger Cameron?*

¶16 Jeff avers the District Court erred in awarding attorney fees to Ginger. He claims the District Court wrongly awarded her $17,988.78 in fees because it considered the parties' relative financial positions in a vacuum without regard to Ginger's financial gains

5

as a result of the Decree of Dissolution. Ginger claims the District Court properly considered all marital and post-marital factors. On appeal, Ginger also contends Jeff failed to obtain a transcript of the hearing addressing attorney fees.

¶17 Our standard of review regarding payment of attorney fees is whether the district court abused its discretion. *In re Marriage of Lee*, 282 Mont. at 423, 938 P.2d at 658. Under § 40-4-110, MCA, a district court must consider the financial resources of both parties before it orders a party to pay the reasonable costs and attorney fees of another party. We have held that an award under the statute "must be based on necessity, must be reasonable, and must be based on competent evidence." *In re Marriage of Zander*, 262 Mont. 215, 227, 864 P.2d 1225, 1233 (1993); *In re Marriage of Barnard*, 241 Mont. 147, 154, 785 P.2d 1387, 1391 (1990).

¶18 Ginger provided the District Court with competent evidence supporting an award of attorney fees under § 40-4-110, including testimony regarding her health problems, inability to generate income to support herself and simultaneously pay the attorney fees, and Jeff's ability to contribute to the fees. Ginger also argues on appeal that Jeff's failure to provide a transcript of the attorney fees hearing constitutes grounds for awarding her fees. Jeff contends the hearing only addressed the amount of attorney fees, a quantity he's not contesting. He further claims that attaching the Order was sufficient.

¶19 Montana Rules of Appellate Procedure require parties to provide a record sufficient to enable the Court to rule upon the issues raised. M. R. App. P. 8. In the absence of the transcript in the record, we cannot review this issue. For that reason, we affirm the District Court's holding regarding the awarding of attorney fees.

6

¶20   *Did the District Court err in categorizing the property equalization payment and the Somers property as not income-producing in its decision to award maintenance?*

¶21   Jeff argues the District Court erred in identifying the Somers property and property equalization payment as not income-producing. The District Court determined that Jeff's net distribution of property amounted to $658,786 and valued Ginger's at $422,542. As a result of this inequity, the District Court awarded Ginger $118,122 to achieve an equitable distribution of the marital estate. Jeff asserts that the payment was income-producing because it gave Ginger the immediate ability to pay her daily expenses and invest the money. He also argues the Somers property was readily convertible to cash, and *was* converted to $117,535 through the sale of the property, transforming the 2.4 acres into income-producing property.

¶22   Section 40-4-203(1), MCA, provides that the District Court may grant maintenance only if it finds that the spouse seeking maintenance: (a) lacks sufficient property to provide for his reasonable needs; and (b) is unable to support himself through employment. We have held that the term "sufficient property" means income-producing property rather than income-consuming property. *Van Atta v. Van Atta*, 252 Mont. 310, 313, 829 P.2d 3, 5 (1992).

¶23   While this Court has recognized that cash payments can be income-producing when viewed in isolation, an analysis within the overall context of the Dissolution is required. *In re Marriage of Olson*, 257 Mont. 208, 219, 848 P.2d 1026, 1033 (1993) (noting that a $1,000 cash payment was income-producing but had to be used to replace property, an act which depleted—not increased—its value to the recipient). Additionally,

it is unclear from the record whether the equalization payments are readily available within the marital estate. The equalization payments, therefore, cannot be predictably identified as sufficient, income-producing property under § 40-4-203, MCA. The District Court accurately identified the property equalization payment as not income-producing.

¶24    Jeff next argues the District Court erred in identifying the Somers property as not income-producing. He claims it was readily convertible to cash and was, in fact, converted to cash when Ginger sold the property for $117,535. The District Court, however, correctly identified the property as not income-producing. In its original form, the marital estate constituted property, not cash. The statute demands an analysis of whether the property itself was sufficient for the recipient, not an analysis of whether the recipient was able to sell it.

¶25    This understanding of the statute is supported by this Court's precedent and the rationale behind the statute. In the context of the maintenance statute, we have deemed property "income-producing" in a limited number of situations in which living or working on the property itself either sustains or grows the individual's income. *See Pfeifer v. Pfeifer*, 282 Mont. 461, 474, 938 P.2d 682, 692 (1997) (recipient able to generate income from working on the property's ranch); *In re Marriage of Herron*, 186 Mont. 396, 408, 608 P.2d 97, 103 (1980) (ongoing medical practice categorized as "income-producing" property). This Court has also noted that the potential future conversion of a home or real property into cash does not negate the reality that property itself, even in significant volume, can be income-consuming. *In re Marriage of Herron*, 186 Mont. at 408, 608 P.2d at 103. This understanding is supported by the rationale

justifying the property distinction, which expresses concern that one party will be left "property poor" with an estate he or she cannot maintain. *See In re Marriage of Herron*, 186 Mont. at 408, 608 P.2d at 103. The rationale, like precedent on this issue, analyzes what the property itself can provide. We therefore affirm the District Court's categorization of the property.

¶26 *Is Ginger entitled to attorney fees on appeal?*

¶27 Finally, Ginger asks this Court to award her attorney fees on appeal under § 40-4-110, MCA. Having reviewed the facts of this case, we determine that fees on appeal are not appropriate.

¶28 For the above-stated reasons, we affirm the District Court's decision.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JIM RICE
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS