FILED

September 5 2012

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 11-0530

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 196N

ROCKY MOUNTAIN BANK-KALISPELL,

        Plaintiff and Appellee,

    v.

BART S. CULBERTSON, JOSEPH M. FLANAGAN,
DARRIS R. FLANAGAN, MICHAEL J. FLANAGAN
and PATRICK FLANAGAN,

        Defendants and Appellants.


APPEAL FROM:    District Court of the Nineteenth Judicial District,
                   In and For the County of Lincoln, Cause No. DV 08-32
                   Honorable James B. Wheelis, Presiding Judge


COUNSEL OF RECORD:

        For Appellants:

                Bart S. Culbertson, (self-represented), Eureka, Montana
                Joseph M. Flanagan, Darris R. Flanagan, (self-represented),
                Eureka, Montana
                Michael J. Flanagan, Patrick Flanagan, (self-represented),
                Eureka, Montana

        For Appellee:

                Kevin S. Jones, Joseph D. Houston; Christian, Samson & Jones, PLLC;
                Missoula, Montana


                           Submitted on Briefs:  July 11, 2012

                                     Decided:  September 5, 2012


Filed:

                _____

                               Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 This is an action brought by Rocky Mountain Bank-Kalispell (RMB) against Bart Culbertson (Culbertson) and Joseph, Darris, Michael, and Patrick Flanagan (Flanagans) to foreclose on RMB's mortgage held on real property located in Lincoln County. In February 2007, RMB agreed to loan $250,000 to Culbertson to develop and subdivide real property owned by Flanagans. Culbertson purchased the property from Flanagans and used $160,000 of the loan proceeds to pay the down payment on the real property to Flanagans. Flanagans retained a security interest in the property to secure payment of the balance of the $1,600,000 purchase price. However, RMB's loan to Culbertson was made contingent on Flanagans entering into a subordination agreement that would grant RMB a first-position security interest in the property. Culbertson's attorney drafted the subordination agreement and the agreement was approved by Flanagans' attorney. Culbertson, Flanagans, and RMB executed the subordination agreement, which granted priority to RMB and provided that its mortgage "be and remain superior to the mortgage lien of Flanagans." The agreement stated that the Culbertson and Flanagans "want the Bank to provide additional funds and perhaps provide additional accommodations to

2

Culbertson for use in payment of all phases of developments expenses." The agreement referenced "the Bank loan" and stated "[t]he Bank anticipates future advances."

¶3 Thereafter, the real estate market declined and Culbertson failed to satisfy RMB's conditions for future advances. Culbertson failed to make payments in accordance with the terms of the loan and RMB initiated foreclosure proceedings by filing a complaint on January 29, 2008. Culbertson and Flanagans filed an answer on November 7, 2008. On December 23, 2008, Culbertson and Flanagans filed a motion for leave to file an amended answer, which included counterclaims, and a demand for jury trial. On December 29, 2008, the District Court granted leave to file an amended answer and counterclaims, but denied the demand for jury trial. Culbertson and Flanagans filed the amended answer and counterclaims.

¶4 RMB filed a motion for summary judgment on Culbertson's and Flanagans' counterclaims, affirmative defenses, and the priority issue. The District Court denied the motion as to the affirmative defenses because it found that there were genuine issues of material fact that precluded summary judgment. However, the District Court granted the motion as to the counterclaims and the priority issue, concluding that the intent of the subordination agreement was to give priority to RMB and that RMB's mortgage was recorded before Flanagans' mortgage.

¶5 A trial was held on August 2 and 3, 2011, before a different presiding District Court Judge who had assumed the bench. The District Court referenced the earlier summary judgment order but also entered findings of fact regarding the terms of the

3

subordination agreement and entered conclusions of law regarding the agreement's interpretation. The District Court held in favor of RMB and ordered foreclosure of its mortgage. Culbertson and Flanagans filed a notice of appeal on September 8, 2011, each filing briefs *pro se* after their counsel filed a motion to withdraw in the District Court. However, although Culbertson and Flanagans filed briefs on appeal, neither party filed the trial transcript or the original trial exhibits with the Clerk of the Supreme Court.[1]

¶6 Culbertson first challenges the denial of his demand for a jury trial by the District Court, which held:

> By failing to demand a jury trial within 10 days after filing their original Answer, the Defendants waived their right to a jury trial. Inasmuch as the counterclaims arise out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the jury waiver is not revoked by the amendment of the Defendant's pleading.

¶7 Culbertson and Flanagans filed their answer on November 7, 2008. Their motion for leave to file an amended answer and the demand for jury trial was filed on December 23, 2008. The demand for jury trial was not premised on any new claim or issue that Culbertson and Flanagans sought to add by way of the amended answer. The Montana Rules of Civil Procedure provide that a demand for jury trial may be demanded "not later than 10 days after the service of the last pleading directed to such issue." M. R. Civ. P. 38(b) (2007). Under these circumstances, Culbertson and Flanagans were required to file a demand for jury trial within 10 days of their original answer. A party

---

[1] Copies of several of the trial exhibits are located in the record as attachments to pleadings and are attached to the appellate briefs. Regarding the trial transcript, Flanagans and Culbertson made a number of inquiries to the court reporter, necessitating an order from the District Court to clarify issues related to the transcript and their counsel's motion to withdraw. Ultimately, however, a transcript was not prepared.

4

waives a jury trial unless its demand is properly served and filed.  M. R. Civ. P. 38(d).

The District Court correctly interpreted and applied Rule 38 of the Montana Rules of

Civil Procedure in denying the demand.  *See Sebena v. American Automobile Assn.*, 280

Mont. 305, 308-09, 930 P.2d 51, 52-53 (1996).

¶8     Culbertson and Flanagans raise additional issues on appeal.  However, these issues

include challenges to the District Court's findings of fact and evidentiary concerns for

which a trial transcript is necessary for proper review, such as the circumstances

surrounding the parties' entry into the subordination agreement, the conditions imposed

by RMB, RMB's commitment to lend additional funds, the sufficiency of consideration,

the lack of good faith and fair dealing, and whether there were undisclosed conditions

that led to a mistake of fact.   For example, in one of Culbertson and Flanagans'

arguments, they offer as follows:

> RMB did not disclose to Culbertson [prior to entering the subordination agreement] that there were any other conditions that had to be met before it would grant the financial accommodations that Culbertson was requesting of it.  Based on his understanding that the *only* condition that the Bank required was that Flanagans would subordinate their mortgage to RMB's mortgages or liens, Culbertson purchased the property . . . . [Emphasis in original.]

> .   .   .

> The [district] court found that "although RMB and Culbertson discussed potential future loans from RMB to Culbertson for the development of the [Flanagan] subdivision, Culbertson did not satisfy the Bank's terms and conditions with regard to such future loans and advances.". . .   The court erred in finding that these other terms and conditions could be imposed

.   .   .

5

> Culbertson's apparent consent to RMB's promissory note and mortgage was not real or free when it was obtained through mistake. . . . The mistake that Culbertson made was his belief that the only condition RMB imposed to the granting of the financial accommodation that he was requesting was that Flanagans' subordinate their mortgage to RMB's mortgage.

We cannot review the District Court's findings regarding the parties' discussions and understandings, or the satisfaction of conditions, without a trial transcript, nor can we review that court's legal conclusions about the interpretation of the agreement without the benefit of a factual record.

¶9 Prior to trial, the District Court entered a partial summary judgment order which provided a very narrow ruling regarding the subordination agreement, holding, in totality, that the agreement's "intention to subordinate the Flanagans' mortgage to RMB's mortgage cannot reasonably be denied. If the Subordination Agreement has one unmistakable purpose, it is that." However, the District Court relegated the larger issues, including the defendants' affirmative defenses, until trial. After trial, the District Court entered findings regarding the factual issues surrounding the transaction. The appeal from the District Court's subordination determination by Culbertson and Flanagans include challenges to these findings and evidence extrinsic to the agreement itself. Their arguments include the following assertions:

> –"RMB represented to Flanagans that it was going to lend money for all phases of development of their land as they and Culbertson were requesting."

6

–"RMB did not disclose to Flanagans that there were any other conditions that had to be met before it would grant the financial accommodations that Flanagans were requesting of it."

–"[T]he court found the following conditions allowed RMB to evade lending money for all phases of Flanagans' property: [list of conditions] . . . None of these 11 conditions were ever disclosed to the Flanagans at the time they signed the subordination agreement."

–"Here, the lender made an intentional misrepresentation that it would lend all money to develop Flanagans' property, while failing to tell them that there were considerable vague and subjective conditions by which it could avoid lending that money, which operated to mislead the Flanagans."

–"RMB deceived Flanagans when it solicited the subordination of their $1,440,000 interest in their land. It induced Culbertson to place over $700,000 of improvements on the property before it told him it would not lend him the money to repay him for those improvements."

Citing the language of the subordination agreement that RMB's mortgage secured "additional loans for development," Flanagans also argue that "[t]he $250,000 loan was not an *additional* loan. It was the initial loan." (Emphasis in original.) They further argue that this loan was "not a loan for development" and that use of these proceeds for "purchase money, bank fees and preparation for the appraisal" was "not development."

¶10 These are fact-intensive issues which, while related to the District Court's partial summary judgment ruling, are nonetheless much broader than that holding. Thus, even though our review of summary judgment is *de novo*, we cannot undertake review of the District Court's narrow holding regarding the "intention" of the subordination agreement without the benefit of the trial record which addressed the factual issues surrounding the transaction, given the arguments made on appeal.

7

¶11    The Montana Rules of Appellate Procedure state:

> The appellant and any cross-appellant have the duty to present the supreme court with a record sufficient to enable it to rule upon the issues raised. Failure to present the court with a sufficient record on appeal may result in dismissal of the appeal or affirmance of the district court on the basis the appellant has presented an insufficient record.

M. R. App. P. 8(2) (2011).  When the trial transcripts are missing from the record, we cannot review evidentiary issues and will affirm the District Court's findings.  *In re Marriage of Cameron*, 2009 MT 302, ¶ 19, 352 Mont. 375, 217 P.3d 78.  Here, the substantive issues raised by Culbertson and Flanagans require review of the trial record. Because neither Culbertson nor Flanagans filed the trial transcript or related trial exhibits, we must decline to undertake review of those issues.

¶12    We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions.  The issues in this case are legal and are controlled by settled Montana law, here, the Montana Rules of Civil Procedure, which the District Court correctly interpreted, and the Montana Rules of Appellate Procedure.

¶13    Affirmed.

/S/ JIM RICE

We concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ BRIAN MORRIS

Justice Patricia O. Cotter concurs.

¶14 Unfortunately, I must concur in the Court's conclusion that it is not possible to resolve the substantive issues surrounding the intent underlying the Subordination Agreement without the benefit of the trial transcript and related trial exhibits. I find this unfortunate because based upon the arguments contained in the briefs of all parties, I was inclined to reverse the decision of the trial court and conclude that because RMB did obligate itself to loan Culbertson all the money required for the project as a condition for the Subordination Agreement and failed to do so, the consideration for the Subordination Agreement failed, and Flanagans' purchase money mortgage should accordingly be given priority over the RMB loan.

¶15 The Subordination Agreement was given to RMB by Flanagans in exchange for the anticipation that the Bank would finance the entire development project. Paragraph 1 of the agreement recited the land development proposal. Paragraph 2, entitled "*Additional Loans for Development*," provided in pertinent part that the Bank would provide "additional funds . . . to Culbertson for use in payment of all phases of developments expenses." The Agreement further provided that "The Bank anticipates future advances." The succeeding Paragraph 3 provided that "As a condition to the granting of the requested financial accommodations as above stated the Bank requires that its mortgage or other lien on the property be and remain superior to the mortgage lien of Flanagans." On paper, therefore, it appears that the Subordination Agreement was given in exchange for full financing of the project—full financing that never

9

materialized. Whatever the reason for the collapse of the arrangement, the fact remains that the consideration given for the subordination failed; therefore—and again on paper— the Subordination Agreement should have been deemed null and void and Flanagans' purchase money mortgage should therefore have enjoyed first priority.

¶16 However, as the arguments highlighted by the Court in ¶ 8 of the Opinion reflect, the *intent* of the Bank with respect to the financing and the underlying conditions was a key focus of the evidence offered at trial. The District Court clearly took account of the testimony and supporting exhibits in reaching its decision. Without a transcript, we are unable to evaluate the evidence so as to determine whether the District Court erred in its findings of fact and resulting conclusions of law. Therefore, although my inclination on the basis of the briefs of the parties was to urge reversal of the court's judgment, I cannot do so without the benefit of a full record. For this reason, I concur.

/S/ PATRICIA COTTER