Justice Beth Baker delivered the Opinion of the Court.
***44 ¶ 1 Hiland Crude, LLC, filed a declaratory action in the First Judicial District Court, Lewis and Clark County, challenging the tax classification of its crude oil gathering pipelines in Montana. Beginning in 2013, the Department of Revenue centrally assessed Hiland Crude's property and classified all of its pipeline systems within the State as ***45 class nine property. Hiland Crude maintains that its flow and gathering systems are properly classified as class eight property, regardless of whether the property is centrally assessed. The District Court granted summary judgment in favor of Hiland Crude. The Department appeals. We affirm.
PROCEDURAL AND FACTUAL BACKGROUND
¶ 2 Hiland Crude owns and operates crude oil gathering and transmission systems in Montana. Hiland Crude's systems in Montana include a transmission pipeline (the Double H Transmission Line), and gathering systems (the Richland Gathering System and the Market Center Gathering System). Third-party shippers pay Hiland Crude to transport crude oil through all of its systems.
¶ 3 The Richland Gathering System and Market Center Gathering System comprise a network of small diameter pipelines that are connected to facilities located at or adjacent to crude production wells. The systems operate at a low pressure. The two systems aggregate crude oil from multiple production wells and receipt points and deliver it to an interconnection with larger, high-pressure transmission pipelines, such as the Double H Transmission Line. The Richland Gathering System and Market Center Gathering System are considered "gathering systems" under industry standards, the American Petroleum Institute definition, and Federal Energy Regulatory Commission ("FERC") accounting standards. The Richland and Market Center systems are subject to FERC tariffs for gathering. The Double H transmission pipeline is subject to separate FERC tariffs for transmission.
¶ 4 The Department began centrally assessing Hiland Crude's property in 2013. Prior to 2013, the Department assessed Hiland Crude's gathering systems locally and classified the properties as class eight property. Class eight property is taxed at 1.5% to 3% of its market value. After centrally assessing the gathering systems, the Department determined that Hiland Crude's gathering systems should be classified as class nine property because they meet the definition of a "pipeline carrier" under the class nine statute. Class nine property is taxed at 12% of its market value. Beginning in 2015, Hiland Crude owned and operated Double H Transmission Line, which also is classified as class nine property.
¶ 5 Hiland Crude paid its taxes under protest for the Richland and Market Center Gathering Systems and filed a declaratory action in the District Court. Hiland Crude does not contest that the Double H Transmission Line is appropriately taxed as class nine property.
***46 Hiland Crude argues that its gathering pipeline systems, however, should be taxed as class eight property because they are "flow lines and gathering lines" under the class eight statute.
¶ 6 Both parties filed motions for summary judgment, agreeing that there are no disputed issues of material fact. The District Court granted summary judgment in favor of Hiland Crude and ordered the Department to refund Hiland Crude the difference between the class eight tax rate and the class nine tax *277 rate as applied to Hiland Crude's gathering systems.
STANDARD OF REVIEW
¶ 7 We review a district court's grant of summary judgment de novo. Bresnan Commc'ns, LLC v. State Dep't of Revenue , 2013 MT 357, ¶ 23, 373 Mont. 29, 315 P.3d 921. Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3).
DISCUSSION
¶ 8 Assessment is "the process by which persons subject to taxation [are] listed, their property described, and its value ascertained and stated." Hilger v. Moore , 56 Mont. 146, 165, 182 P. 477, 480 (1919). The Department of Revenue is responsible for assessing all property for taxation. The Department assesses most property at the local county level. See Omimex Can., Ltd. v. State Dep't of Revenue , 2008 MT 403, ¶ 11, 347 Mont. 176, 201 P.3d 3. But it assesses certain property centrally, such as "single and continuous property operated in more than one county or more than one state." Section 15-23-101(2), MCA. After property is assessed, the Department determines the rate of the tax levy by classifying the property according to statutory definitions. See Title 15, chapter 6, MCA; Zinvest, LLC v. Gunnersfield Enters., Inc. , 2017 MT 284, ¶ 17, 389 Mont. 334, 405 P.3d 1270 ; Hilger , 56 Mont. at 165, 182 P. at 480.
¶ 9 Class eight property includes, in pertinent part, "for oil and gas production, all ... equipment, including flow lines and gathering lines." Section 15-6-138(1)(c)(iii), MCA. In turn, "flow lines and gathering lines" are defined as "pipelines used to transport all or part of the oil or gas production from an oil or gas well to an interconnection with a common carrier pipeline as defined in 69-13-101, a pipeline carrier as defined in 49 U.S.C. 15102(2), or a rate-regulated natural gas ***47 transmission or oil transmission pipeline regulated by the public service commission or the federal energy regulatory commission." Section 15-6-138(2)(c), MCA.
¶ 10 Class nine property includes, in pertinent part, "allocations for centrally assessed natural gas distribution utilities, rate-regulated natural gas transmission or oil transmission pipelines regulated by either the public service commission or the federal energy regulatory commission, a common carrier pipeline as defined in 69-13-101, a pipeline carrier as defined in 49 U.S.C. 15102(2), or the gas gathering facilities specified in 15-6-138(5)." Section 15-6-141(1)(d), MCA. Under 49 U.S.C. 15102(2), "pipeline carrier" is defined as "a person providing pipeline transportation for compensation."
¶ 11 The Department argues that a crude oil gathering system is subject to taxation as class nine property under § 15-6-141, MCA, if (1) the system is centrally assessed as part of a single and continuous property operated in more than one county or state, and (2) the owner of the system is compensated for transporting oil through the system. The Department argues that Hiland Crude's gathering systems provide "pipeline transportation for compensation" as a "pipeline carrier" under 49 U.S.C. 15102(2). The Department maintains that because Hiland Crude is centrally assessed and operates as a pipeline carrier, its gathering systems properly are classified under class nine. The Department does not deny that Hiland Crude's gathering systems also fall under the definition for "flow lines and gathering lines" as class eight property under § 15-6-138, MCA. The Department also agrees that a taxpayer may own property in more than one class and that separate properties of a taxpayer can be placed in different classes. The Department maintains, however, that because Hiland Crude's gathering systems meet the definitions of multiple classifications, the Department has administrative discretion to decide how to classify that property. It did so properly, the Department contends, by applying the federal definition of "pipeline carrier" to Hiland Crude's gathering systems.
¶ 12 The Department's appeal presents a question of statutory interpretation. Our objective when we interpret a statute is *278 "to implement the objectives the legislature sought to achieve." W. Energy Co. v. State Dep't of Revenue , 1999 MT 289, ¶ 11, 297 Mont. 55, 990 P.2d 767. We ascertain legislative intent, in the first instance, from the plain meaning of the words used. W. Energy Co. , ¶ 11. The role of a judge when interpreting a statute "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." ***48 Section 1-2-101, MCA. We must give effect to all provisions of the statute when possible. Section 1-2-101, MCA. "[T]ax statutes are to be strictly construed against the taxing authority and in favor of the taxpayer." Omimex Can. Ltd. , ¶ 21.
¶ 13 The Department spends much of its briefing justifying its central assessment of Hiland Crude's gathering systems. It argues that the Legislature included references to "a pipeline carrier as defined in 49 U.S.C. 15102(2)" in the class eight, class nine, and central assessment statutes, revealing an intent for all such "pipeline carriers" to be centrally assessed and classified under class nine. See §§ 15-6-138(2)(c), 15-6-141(1)(d), 15-23-101(2)(c), MCA. Neither party disputes that centrally assessing Hiland Crude's property was proper under § 15-23-101, MCA. But "where the property is assessed does not make any difference for its classification." Omimex Can., Ltd. , ¶ 27. "[T]he classification statute[s] first become[ ] operative" when assessment is complete. Butte Elec. Ry. v. McIntyre , 71 Mont. 21, 24, 227 P. 61, 62 (1924). "[T]he process of classification is separate from the assessment of property or the determination of assessed value." Pac. Power & Light Co. v. Dep't of Revenue , 249 Mont. 33, 36, 813 P.2d 433, 435 (1991). Compare Title 15, chapter 6, MCA (classification), with Title 15, chapter 23, MCA (central assessment). When a property is centrally assessed, the Department uses a unit method of valuation "whenever appropriate," see Admin. R. M. 42.22.111(1), that focuses on the owner of the property: "the unit method of valuation inherently values a property based on its value in the hands of its current owner." State Dep't of Revenue v. PPL Mont., LLC , 2007 MT 310, ¶ 31, 340 Mont. 124, 172 P.3d 1241. In contrast, the classification of property focuses on the "physical attributes" of property and "the productivity that results from the use of the property." Bresnan , ¶ 31.
¶ 14 Addressing its classification of Hiland Crude's property, the Department argues that the term "pipeline carrier" as used in the statutes does not distinguish between gathering lines and transmission lines. Rather, based on the federal definition, the term applies to all pipelines that carry oil for compensation. The Department maintains that certain flow lines and gathering lines, such as Hiland Crude's systems, fall into class nine because they carry oil for compensation.
¶ 15 The Department's arguments fail to account for an express distinction in the statutory definitions of class eight and class nine property between transmission lines and gathering lines. Section 15-6-141(1)(d), MCA, defines class nine to include a broad category of pipelines, including transmission pipelines, common carrier pipelines, ***49 and pipeline carriers. Section 15-6-138(2)(c), MCA, defines class eight to include a more specific subset of pipelines-namely, flow lines and gathering lines. Section 15-6-138(2)(c), MCA, defines flow lines and gathering lines under class eight by the use to which the pipeline is put: "pipelines used to transport all or part of the oil or gas production from an oil or gas well to an interconnection" with a pipeline described as class nine property under § 15-6-141(1)(d), MCA. (Emphasis added). The statute defining class eight provides the boundaries of that class and treats all flow lines and gathering lines the same. The plain language of §§ 15-6-138 and -141, MCA, reveals that class eight differentiates "flow lines and gathering lines" from the broader definition of pipelines defined in class nine.
¶ 16 The Legislature's inclusion of an exception bolsters this interpretation: Section 15-6-138(5), MCA, specifically excludes from class eight treatment certain gas gathering facilities that provide gathering services to third parties on a contractual basis. Without this provision, these facilities would fall under the class eight definition of flow lines and gathering lines. Under the Department's interpretation of the statutes, however, this *279 provision-and the reference to it in § 15-6-141(1)(d), MCA -would be superfluous, because the facilities described by § 15-6-138(5), MCA, already would be included in class nine, as they transport gas for compensation. It is plain from the language of the statutes defining class nine and class eight that the Legislature intended to differentiate for tax classification purposes larger transmission lines from pipelines that gather and transport oil or gas "from an oil or gas well to an interconnection." Section 15-6-138(2)(c), MCA.
¶ 17 The Department's reliance on Bresnan is misplaced. In that case, Bresnan used a single physical line to deliver three separate services. These different uses of the line fell under different tax classifications. The statutes defining the relevant classes gave no indication as to which statute applied over the other. Bresnan , ¶ 40-41. In such a situation, we held that the Department had authority to classify all of the property to one appropriate class. Bresnan , ¶ 40. This is not the case here. Hiland Crude uses its lines to provide one service: gathering crude oil and transporting it to an interconnection with a transmission line. The Department does not dispute that Hiland Crude's gathering systems fall under the definition of "flow lines and gathering lines" under § 15-6-138(2)(c), MCA. Because the plain language of the statute reveals that class eight differentiates "flow lines and gathering lines" from the broader class of pipelines described under class nine, classifying the gathering systems as class eight or ***50 class nine is not "an administrative matter within [the Department's] broad discretion." Bresnan , ¶ 43 (quoting State v. Hornstein , 2010 MT 75, ¶ 16, 356 Mont. 14, 229 P.3d 1206 ). The intent of the Legislature to include all flow lines and gathering lines under class eight is clear. The District Court properly granted summary judgment in favor of Hiland Crude.
CONCLUSION
¶ 18 The District Court's order on summary judgment and its declaratory judgment in Hiland Crude's favor are affirmed.
We Concur:
MIKE McGRATH, C.J.
JAMES JEREMIAH SHEA, J.
JIM RICE, J.
INGRID GUSTAFSON, J.