Justice Jim Rice delivered the Opinion of the Court.
***410 ¶1 John Melton (Melton) appeals the summary judgment dismissal of his medical malpractice claim against Defendant Steven Speth, M.D. (Dr. Speth), entered by the Thirteenth Judicial District Court, Yellowstone County. We affirm, addressing the following issue:
*701 Did the District Court err by holding that Melton's expert was not qualified under § 26-2-601(1)(a), MCA ?
FACTUAL AND PROCEDURAL BACKGROUND
¶2 In November 2009, Dr. Speth performed a spinal surgery on Melton, wherein Dr. Speth utilized a medical device manufactured by Medtronic, known as a TSRH-3D. The device employed locking screws, couplers, and rods to fuse the lower spine. One of the locking screws on the implanted device apparently failed or was not properly secured, resulting in only partial fusion of Melton's spine. Dr. Speth performed an additional surgery in 2012 to remove loose hardware and fuse an additional portion of Melton's spine. Melton brought this action in 2013, alleging that Dr. Speth breached the standard of care by failing to properly secure the locking screw during the 2009 surgery.
¶3 In discovery, Melton disclosed Steven Graboff, M.D. (Dr. Graboff), as his sole standard of care expert witness. Dr. Graboff, a board-certified orthopedic surgeon for over thirty years, explained in his deposition that he had ceased his surgery practice, performing his last surgery in December 2004. He testified that, during his surgery practice, he had performed spinal fusions, but had not utilized the Medtronic TSRH-3D, because it was introduced in 2009, after he had discontinued his surgery practice. Dr. Graboff stated that since January of 2005, his practice has been "nonsurgical" and "office-based." He currently practices what he described as "conservative care," screening out patients who will likely require surgery. He testified that if a patient needs surgery, he discusses their options, but ultimately refers them to a colleague who performs surgery. Dr. Graboff also testified he teaches physical therapy students, which includes an explanation of surgical techniques for context, but he does not teach how to perform surgery. He offered the opinion that, because the hardware used in Melton's surgery failed "immediately" after surgery, the locking screws were not properly tightened. Dr. Graboff admitted that the mere result of the surgery was the basis for his opinion that Dr. Speth had been negligent, but he could not identify anything in particular that Dr. Speth had done wrong.
¶4 Dr. Speth moved for summary judgment, arguing that Dr. Graboff was not qualified under § 26-2-601(1)(a), MCA, to opine on this ***411 malpractice claim because Dr. Graboff had not performed surgery since 2004, and that, even if qualified, his opinion was impermissibly based on the doctrine of res ipsa loquitur to establish Dr. Speth had breached the standard of care, citing Clark v. Norris , 226 Mont. 43, 48-49, 734 P.2d 182, 185-86 (1987). The District Court agreed with Dr. Speth on both arguments, granting summary judgment. Melton appeals.
STANDARD OF REVIEW
¶5 We review summary judgment rulings de novo , applying the same M. R. Civ. P. 56 criteria as the district court to determine "whether the moving party has established both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law." Beehler v. E. Radiological Assocs., P.C. , 2012 MT 260, ¶ 17, 367 Mont. 21, 289 P.3d 131 (citations omitted). However, "any determination underlying the order granting summary judgment is reviewed under the standard appropriate to that determination." McClue v. Safeco Ins. Co. , 2015 MT 222, ¶ 13, 380 Mont. 204, 354 P.3d 604 (citations omitted). While the exclusion of expert testimony is generally reviewed for abuse of discretion, McColl v. Lang , 2016 MT 255, ¶ 7, 385 Mont. 150, 381 P.3d 574 (citations omitted), when the exclusion of an expert is based purely on the interpretation of evidentiary rules and statutes, we review for correctness. McClue , ¶ 14. Here, there is no dispute of material facts, and at issue is the exclusion of an expert based on the interpretation of a statute, which we review for correctness.
¶6 "Our objective when we interpret a statute is 'to implement the objectives the legislature sought to achieve.' " Hiland Crude, LLC v. Dep't of Revenue , 2018 MT 159, ¶ 12, 392 Mont. 44, 421 P.3d 275 (citations omitted). We ascertain legislative intent, in the first instance, from the plain meaning of the words used.
*702 Hiland Crude, LLC , ¶ 12. The role of a judge when interpreting a statute "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. When possible, we give effect to all provisions of the statute. Section 1-2-101, MCA.
DISCUSSION
¶7 Did the District Court err by holding that Melton's expert was not qualified under § 26-2-601(1)(a), MCA ?
¶8 Melton argues the District Court erred by holding that Dr. Graboff was not qualified under § 26-2-601(1)(a), MCA, as an expert witness in support of his claim against Dr. Speth.
***412 ¶9 For a medical malpractice claim, "the plaintiff must generally produce expert medical testimony establishing the applicable standard of care and a subsequent departure from that standard," subject to exceptions not at issue here. Beehler , ¶ 18. Section 26-2-601, MCA, considered in conjunction with M. R. Evid. 702, establishes the qualifications for medical malpractice expert witnesses. Beehler , ¶ 23. The statute provides, in part:
(1) A person may not testify as an expert witness on issues relating to negligence and standards of care and practice in an action on a malpractice claim, as defined in 27-6-103, for or against a health care provider, as defined in 27-6-103, unless the person:
(a) is licensed as a health care provider in at least one state and routinely treats or has routinely treated within the previous 5 years the diagnosis or condition or provides the type of treatment that is the subject matter of the malpractice claim or is or was within the previous 5 years an instructor of students in an accredited health professional school or accredited residency or clinical research program relating to the diagnosis or condition or the type of treatment that is the subject matter of the malpractice claim....
Section 26-2-601, MCA. Under the statute's plain language, a proposed medical expert must be "licensed as a health care provider in at least one state," and (1) "routinely treat[ ] or has routinely treated within the previous 5 years the diagnosis or condition" that is "the subject matter of the malpractice claim;" (2) currently "provide[ ] the type of treatment that is the subject matter of the malpractice claim;" or (3) "is or was within the previous 5 years an instructor of students in an accredited health professional school or accredited residency or clinical research program relating to the diagnosis or condition or the type of treatment that is the subject matter of the malpractice claim."
¶10 Melton argues that, as a licensed physician, Dr. Graboff qualified as an expert witness under criterion one because he "routinely treats ... the diagnosis or condition" that is "the subject matter of the malpractice claim." Melton asserts that Dr. Graboff satisfied this criterion because he was "currently treating patients for orthopedic conditions, the same condition for which Dr. Speth was attempting to ***413 treat [Melton] at the time of the failed operation."[1]
¶11 However, Dr. Graboff testified that he does not treat patients having conditions requiring surgery, but rather screens out those patients and refers them to other physicians. While Melton contends the "subject matter of the claim" is broadly categorized as "back pain," which Dr. Graboff routinely treats, the subject matter of the claim here is a treatment, specifically, a spinal surgery in which Melton alleges Dr. Speth committed negligence, and which Dr. Graboff does not perform. As the District Court reasoned, "Melton's first amended complaint, his contentions in the proposed final pretrial order, and breach of the standard of care section of Dr. Graboff's expert report all demonstrate Melton's malpractice claim is based on Dr. Speth's surgery, i.e., treatment.... [T]here is no suggestion that Dr. Speth breached the standard of care regarding [Melton's] diagnosis or condition...." Dr. Graboff's current practice does not include the treatment of *703 patients within the subject matter of Melton's claim against Dr. Speth. Thus, we conclude the District Court properly excluded Dr. Graboff under § 26-2-601(1)(a), MCA.
¶12 This conclusion follows our prior holdings regarding medical expert qualification. In Beehler , the plaintiff claimed a radiologist negligently performed an infection control procedure during a myelogram injection by failing to wear a mask, resulting in bacterial meningitis of the spine. Beehler , ¶¶ 2-4. We determined the plaintiff's proposed expert, despite not being a radiologist who performs myelograms, nonetheless satisfied § 26-2-601(1)(a), MCA, because in his practice he "treat[ed] bacterial meningitis, and provide[d] the type of treatment at issue, infection prevention during a myelogram," where we explained that the subject matter of the claim was "the wearing of a mask during the myelogram." Beehler , ¶ 25. In contrast to the expert in Beehler , Dr. Graboff does not provide "the type of treatment at issue" where the subject matter of the claim is spinal surgery.
¶13 In McColl , the plaintiff claimed a naturopathic physician negligently applied black salve to a facial blemish, burning her nose. McColl , ¶ 3. We affirmed the district court's determination that the defense expert, a naturopath, was qualified under § 26-2-601(1)(a), MCA, because despite not being an expert on the use of black salve, he routinely treated the condition at issue, which was ***414 facial lesions, and was familiar with the standard of care for a naturopath treating that condition. McColl , ¶ 18. In contrast to the expert in McColl , Dr. Graboff did not provide treatment for the condition at issue, that is, a back condition requiring spinal surgery, and instead he referred such patients to surgeons.
¶14 In Griffin v. Moseley , 2010 MT 132, 356 Mont. 393, 234 P.3d 869, the Court did not explicitly reference § 26-2-601, MCA, but addressed malpractice expert qualification generally. Moseley , ¶¶ 30-33. The Court considered the qualifications of a non-surgical physician, a neuro-ophthalmologist, as an expert for a malpractice claim alleging the failure to obtain informed consent from the plaintiff before a surgery performed by a neurosurgeon. The Court determined that, because the neuro-ophthalmologist treated the same condition using nonsurgical techniques, he was qualified to provide an opinion about the informed consent process of the surgery, because his expertise pertained to alternative treatments. Griffin , ¶ 33. However, the Court also made clear in contrast that the neuro-ophthalmologist was not qualified to render an opinion on violation of the standard of care for the surgery itself. Griffin , ¶ 31. As with that portion of Griffin , Dr. Graboff, a non-surgical physician, is not qualified here to opine about the standard of care for spinal fusion surgeries.
¶15 We conclude the District Court did not err by excluding Dr. Graboff's testimony under § 26-2-601(1)(a), MCA, and, on that basis, by entering summary judgment on behalf of Dr. Speth.[2]
¶16 Affirmed.
We concur:
MIKE McGRATH, C.J.
LAURIE McKINNON, J.
BETH BAKER, J.
DIRK M. SANDEFUR, J.

This is the only basis under § 26-2-601(1)(a), MCA, which Melton seeks to qualify Dr. Graboff. Melton does not address Dr. Graboff's past treatment within the five-year look-back period or Dr. Graboff's instruction of students.

Having determined that Dr. Graboff was not qualified as an expert witness under § 26-2-601, MCA, we need not consider the issue of whether Dr. Graboff's opinion impermissibly relied on the doctrine of res ipsa loquitur .