Chief Justice Mike McGrath delivered the Opinion of the Court.
¶ 1 This is an appeal from a Thirteenth Judicial District Court order modifying Dennis Simpson's (Dennis) and Larissa Simpson's (Larissa) Property Settlement Agreement and subsequent order awarding attorney fees. We affirm.
¶ 2 We restate the issues on appeal as follows:
1. Whether the District Court abused its discretion when it modified the Agreement, terminating monthly payments to Larissa.
2. Whether the District Court abused its discretion when it limited the amount of Larissa's attorney fees to those incurred during the contempt proceedings.
PROCEDURAL AND FACTUAL BACKGROUND
¶ 3 Dennis and Larissa were married in 1988 and divorced in 2006. In early November 2006, the District Court entered a Final Decree of Dissolution of Marriage which incorporated both a Property Settlement Agreement (Agreement) and a Stipulated Final Parenting Plan. Between 2006 and 2009, the parties were engaged in ongoing disputes and litigation, mainly involving the parenting plan. In 2013, this Court affirmed the District Court's decision to deny Dennis's motion to modify child support and Larissa's motion to invalidate a stipulation concerning delayed child support payments.
*1001 Simpson v. Simpson , 2013 MT 22, 368 Mont. 315, 294 P.3d 1212 ( Simpson I ).
¶ 4 Pursuant to the Agreement, Dennis retained the bulk of the marital assets and assumed responsibility for the marital debts. Larissa was to receive a $10,000 monthly payment from Dennis each month for life, secured by a life insurance policy on Dennis's life with Larissa as the sole beneficiary. The Agreement also required Dennis to pay Larissa a lump sum of $500,000 and provide her with a lifetime gym membership. The Agreement included a non-modification clause, which stated that "Both parties agree that this Agreement and any Decree of Dissolution of their marriage incorporating this Agreement shall not be modified in any future legal proceeding under the authority of § 40-4-201(6), MCA." The parties also included a provision that the prevailing party in any future dispute will be entitled to attorney fees.
¶ 5 At or near the time of dissolution, the parties prepared financial statements, which indicated their net worth to be approximately $13,000,000. However, the District Court found the "assets were not worth anywhere near $13,000,000," noting that these "statements exaggerated the parties' net worth and, in further complication, much of the value of these assets was completely lost with the economic disaster occurring in 2008-09." These assets included (1) a note receivable for $500,000; (2) a certificate of deposit with Mountain West Bank for $385,000; (3) Arrow Construction Inc. valued at $600,000; (4) Rainbow Subdivision valued at $4,000,000; (5) lots in Northstar Subdivision valued at $750,000; (6) eighty acres of property at Triple Creek Meadows valued at $1,900,000; (7) two lots at the Bozeman Hot Springs valued at $1,200,000; (8) the Bozeman Hot Springs valued at $5,000,000; (9) personal belongings valued at $600,000; and (10) $62,000 in cash. Dennis also noted multiple debts in his financial statement, including loans with Mountain West Bank and Yellowstone Bank and various tax obligations.
¶ 6 In May 2015, Dennis continued to fall behind on the monthly $10,000 payments to Larissa. On May 7, 2015, Larissa filed a motion to hold Dennis in contempt for failure to make payments. Larissa also moved the District Court to find Dennis in breach of the Agreement for his failure to maintain life insurance. After a hearing, the District Court issued an order for an accounting and held the contempt in abeyance after Dennis advised that he was filing for bankruptcy in Arizona. Following bankruptcy proceedings in Arizona and several continuances, Dennis filed his accounting on May 4, 2017. The District Court held another hearing on July 25, 2017. Following that hearing, Dennis filed a motion to modify the Agreement, arguing that changed circumstances made the Agreement unconscionable.
¶ 7 On October 31, 2017, the District Court found Dennis in contempt, ordered him to pay Larissa $253,475, and awarded Larissa court costs and reasonable attorney fees associated with her contempt motions. The District Court also modified the Agreement by terminating Dennis's obligation to pay Larissa $10,000 a month.[1] The District Court concluded that the Agreement was unconscionable under the current circumstances because the valuation of the marital assets was "grossly inflated," a fire damaged the Bozeman Hot Springs, and an economic collapse in 2008 virtually halted development projects in Gallatin County. The modification order stated that Dennis could purge his contempt if he made monthly installments of $2,000 on or before the tenth day of each month until Larissa was paid in full. The District Court denied Larissa's claim for loss of investment benefit and ruled that Dennis's second wife, Michelle Simpson, was not required to divert payments she owed Dennis to Larissa.
¶ 8 On January 10, 2018, pursuant to the provision within the Agreement that awarded reasonable attorney fees and costs to the prevailing party, the District Court awarded Larissa $26,953 associated with her contempt action. The District Court awarded 75% of the $35,937.50 that Larissa originally requested because 25% of the proceedings involved issues where Dennis was the prevailing party. These included modification issues *1002 and issues related to Dennis assigning his interest in a note payable to Larissa. The District Court declined to award Larissa attorney fees related to the bankruptcy proceedings in Arizona. Larissa's request for an award of costs was denied because she failed to file a bill of costs pursuant to § 25-10-501, MCA.
¶ 9 Larissa appeals the District Court's decision to modify the Agreement and the District Court's limitation of attorney fees related to her contempt motions.
STANDARD OF REVIEW
¶ 10 The construction and interpretation of a written agreement are questions of law. Orr v. Orr , 2017 MT 291, ¶ 8, 389 Mont. 400, 410 P.3d 181. We review a district court's conclusions of law for correctness. In re Marriage of Pospisil , 2000 MT 132, ¶ 20, 299 Mont. 527, 1 P.3d 364. This Court reviews a district court's findings of fact for clear error. In re S.T. , 2008 MT 19, ¶ 8, 341 Mont. 176, 176 P.3d 1054. We review a district court's determinations of unconscionability under § 40-4-208(2)(b)(i), MCA, for abuse of discretion. Toenjes v. Toenjes , 2018 MT 189, ¶ 9, 392 Mont. 230, 422 P.3d 1215. An award of attorney fees is also reviewed under the abuse of discretion standard. In re Marriage of Cameron , 2009 MT 302, ¶ 10, 352 Mont. 375, 217 P.3d 78. In a dissolution proceeding, a district court abuses its discretion if it "acted arbitrarily without employment of conscientious judgment" or "exceeded the bounds of reason resulting in substantial injustice." In re Pospisil , ¶ 19.
DISCUSSION
¶ 11 1. Whether the District Court abused its discretion when it modified the Agreement, terminating monthly payments to Larissa.
¶ 12 As a general rule, terms of a separation agreement, except those providing for the support, parenting, and parental contact with children, are binding on a court unless, after considering the economic circumstances of the parties and any other relevant evidence, the separation agreement is "unconscionable." Section 40-4-201(2), MCA Property disposition provisions may not be revoked or modified unless the court finds "conditions that justify the reopening of a judgment under the laws of this state." Section 40-4-208(3)(b), MCA. Determinations of unconscionability are made "subject to the underlying facts on a case-by-case basis." Jackson v. Jackson , 2008 MT 25, ¶ 29, 341 Mont. 227, 177 P.3d 474. However, Montana law also provides that a "decree may expressly preclude or limit modification of terms set forth in the decree if provided for in the separation agreement." Section 40-4-201(6), MCA. We have held that if a decree limits modification, a district court "must adhere to the non-modification clause and cannot later modify the agreement." Tanascu v. Tanascu , 2014 MT 293, ¶ 14, 377 Mont. 1, 338 P.3d 47 (quoting In re Marriage of Cortese , 2008 MT 28, ¶ 9, 341 Mont. 287, 176 P.3d 1064 ).
¶ 13 In Tanascu , Linda Tanascu had petitioned the district court to modify her property settlement agreement for unconscionability because the district court "wrongfully failed to make findings as to the net value of the marital estate and consequently awarded [her ex-husband] $1,721,641 while awarding her only $96,112," and because she had trouble selling her house for as much as she had anticipated. Tanascu , ¶ 7. This Court held that pursuant to § 40-4-201, MCA, and the non-modification provision included in the agreement, the district court's decision not to reopen and modify the agreement was not an abuse of discretion. Further, this Court held that M. R. Civ. P. 60(b)(6) did not provide any relief to Linda because the district court was not required to determine the value of any assets covered by the settlement agreement when it entered the decree of dissolution, and there was no indication that the agreement was unconscionable.
¶ 14 In Orr , this Court affirmed the district court's denial of Daniel Orr's motion to modify maintenance. Daniel and Melinda Orr's marriage dissolution provided that Daniel would pay Melinda $3,000 every month in maintenance for a period of three and one-half years. This payment was, "in effect, a structured purchase of Melinda's share of [their] business." Orr , ¶ 13. The marital and property settlement agreement *1003 also contained a non-modification provision, saying that their agreement "may not be amended or modified except by an agreement in writing...." Orr , ¶ 3. Daniel petitioned the district court to modify his maintenance payments because his business in the Bakken oil fields was severely affected when the oil market declined, forcing him to take a lower-wage position. This Court held that "the maintenance provision [was] an inseverable part of the property distribution provided in the [a]greement, and [could not] be separately modified by a court upon Daniel's motion," in part because "where a separation agreement expressly precludes modification or limitation of maintenance, a [d]istrict [c]ourt is barred from later modifying the terms of the agreement." Orr , ¶¶ 11, 13 (citations omitted).
¶ 15 We note that, subject to limited exceptions not applicable here, maintenance agreements may only be modified "upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." Section 40-4-208(2)(b), MCA.
¶ 16 Larissa argues that the District Court erred when it modified the Agreement, because it has a non-modification provision. Conversely, Dennis argues that because he was surprised by unforeseeable events that prevented him from paying Larissa $10,000 every month, the District Court was correct to modify the Agreement pursuant to M. R. Civ. P. 60(b). Further, Dennis asserts that these events and substantially changed circumstances made the $10,000 monthly payments unconscionable, and thus subject to modification.
¶ 17 The statutory provisions addressing modification of maintenance payments in § 40-4-208(2)(b)(i), MCA, modification of property disposition provisions in § 40-4-208(3)(b), MCA, enforcement of separation agreements in § 40-4-201(2) and (3), MCA, and non-modification clauses in § 40-4-201(6), MCA, appear to conflict. Read separately, § 40-4-201(6), MCA, could prevent a court from modifying even an unconscionable decree or settlement agreement if that agreement included a non-modification clause. However, it has long been a fundamental rule that statutes should be interpreted as a whole, giving meaning to all, if possible. Section 1-2-101, MCA ; Mont. Fish, Wildlife & Parks v. Trap Free Mont. Pub. Lands , 2018 MT 120, ¶ 14, 391 Mont. 328, 417 P.3d 1100 ; Hiland Crude, LLC v. Dep't of Revenue , 2018 MT 159, ¶ 12, 392 Mont. 44, 421 P.3d 275 ; City of Great Falls v. Morris , 2006 MT 93, ¶ 19, 332 Mont. 85, 134 P.3d 692 ; State v. Martel , 273 Mont. 143, 148, 902 P.2d 14, 17 (1995) ; Aleksich v. Industrial Accident Fund , 116 Mont. 127, 137, 151 P.2d 1016, 1020 (1944). This Court interprets a statute "as a whole, without isolating specific terms from the context in which they are used by the Legislature." Mont. Fish, Wildlife & Parks , ¶ 14 (citations omitted). It is especially important to interpret each provision in conjunction with the whole when considering a broad statutory scheme that addresses the same subject matter. Reading the provisions within Title 40, chapter 4, MCA, together, it is apparent that the Legislature considered unconscionability as an appropriate reason to modify property settlement agreements in all cases.
¶ 18 Section 40-4-201(2), MCA, specifically provides that except for parenting and support issues, separation agreements are binding on a court unless the court finds the agreement unconscionable after considering the parties' economic circumstances and other relevant evidence. And § 40-4-208(3)(b), MCA, allows modification of a property disposition if the court finds conditions that justify reopening the judgment. We hold that courts may modify decrees with settlement agreements in dissolution cases despite a non-modification clause if the agreement is unconscionable. Read together it appears that the non-modification provisions of § 40-4-201(2), MCA, were not enacted to trump a district court's findings of unconscionability.
¶ 19 Although Dennis and Larissa's Agreement included a non-modification provision, clearly the parties anticipated potential future modification efforts by including the attorney fee provision. Several unique and unforeseeable events occurred between the parties' marriage dissolution in 2006 and Dennis's motion to modify the Agreement in 2017, substantially changing the circumstances *1004 and making the Agreement unconscionable.
¶ 20 The following summarizes the assets identified in the parties' financial statements and how they have either decreased in value or are no longer in Dennis's possession.
¶ 21 The note receivable from Dave MacDonald was for a property transaction, which created an unsecured $500,000 debt to Dennis. However, MacDonald subsequently filed for bankruptcy and his obligation to Dennis was discharged in the bankruptcy.
¶ 22 In his financial statement, Dennis asserted he had a certificate of deposit with Mountain West Bank in the amount of $385,000. After a fire at the Bozeman Hot Springs, Dennis received $1,500,000 in insurance proceedings. Dennis then made payments on loans from the bank and repairs to the hot springs, leaving $385,000 as the remaining balance.
¶ 23 Dennis and Larissa acquired property referred to as Rainbow Subdivision in 2001, which Dennis estimated to be worth $4,000,000 in his financial statement. He had plans to develop the subdivision and sell the individual lots. Although Dennis received a Letter of Intent to purchase the hot springs for $6,000,000 and an option to purchase the Rainbow Subdivision for $4,500,000 in 2008, the economy deteriorated and the sale did not occur. Mountain West Bank informed Dennis that he needed to pay off two loans or assign the Rainbow Subdivision to the bank, as the property had been pledged as security. Consequently, Dennis sold the Rainbow Subdivision and another subdivision referred to as Northstar Subdivision for a total of $1,670,000. From these proceeds $988,922 was paid to the bank to satisfy the loans secured by the property. Dennis used the remaining money to acquire another property, which was then later sold for approximately $214,000 less than the original exchange value.
¶ 24 Also in his financial statement Dennis identified the fair market value of his construction business, Arrow Construction Inc., at $600,000. However, the topsoil he included in this estimate was no longer available. The remaining estimated value of Arrow Construction was comprised of construction tools which may have some re-sale value, but continue to deteriorate in value.
¶ 25 Dennis owned eighty acres of property at Triple Creek Meadows, which had a fair market value of $1,900,000. Dennis had intended to put the eighty acres into the Triple Creek Meadows LLC when a final subdivision was platted. However, Triple Creek Meadows LLC declared bankruptcy and Dennis sold his acres at a net loss of $83.
¶ 26 Dennis's financial statement indicated that two lots at the Bozeman Hot Springs were valued at $1,200,000. They were sold in 2011 for $886,476. However, because Dennis owed more money on the properties than what he sold them for, he ended up with a net loss of $17,107.42 on the sale. The hot springs was valued at $5,000,000 in 2009, and sold for $5,500,000. Proceeds from this sale were distributed to satisfy outstanding tax obligations, to Larissa to satisfy obligations Dennis owed her through September 2011, to Larissa's attorney for attorney fees and costs, and the remainder to Dennis.
¶ 27 In 2009, Dennis valued his personal belongings at $600,000. However, much of these belongings were either sold with his home or benefitted the children of the parties and were not realized by Dennis in any meaningful way. Dennis also noted having $62,000 in cash in 2009.
¶ 28 Dennis used the remaining funds from the sale of the Bozeman Hot Springs to purchase the Sleeping Buffalo Hot Springs in Malta, Montana. He invested $580,370 in the Sleeping Buffalo Hot Springs, including the purchase and cost of improvements. However, Dennis could not finish the property for lack of funds so he sold it to his second wife, Michelle, for $545,524 in 2015. Pursuant to the Agreement Regarding Property and accompanying Promissory Note, Michelle was to pay Dennis monthly payments of $3,306, representing principal and interest at the rate of 4% per annum. The monthly payments together with Dennis's salary or funds available to him to operate Sleeping Buffalo appear to be Dennis's only remaining assets. However, he testified that he entered into an agreement with Michelle to forego the monthly payments until she finished developing lodging on the property.
*1005 ¶ 29 Lastly, Dennis's life insurance premium increased from $320 a month to $1,412 a month in October 2014. Dennis could not afford these new payments and let the policy lapse, leaving him without life insurance.
¶ 30 Larissa relies heavily upon this Court's application of § 40-4-201(6), MCA, in Tanascu and Orr . However, the cases are factually distinguishable. Here, both parties' estimated net worth of $13,000,000 was greatly exaggerated, and most assets were completely lost with the 2008 economic decline. As noted by the District Court in its 2017 order, unlike the oil market decline in Orr , the financial crisis was felt globally, impacting many areas of the American economy and was considered to have been the worst economic crisis since the Great Depression in the 1930s. As a developer, Dennis was directly impacted. Further, although their accounting reflected a number of assets, Dennis and Larissa did not actually possess some of those assets when the parties entered into the Agreement.
¶ 31 The Bozeman Hot Springs, which was the only real income-producing asset, was sold, in part, to satisfy payment obligations to Larissa under the Agreement. Without this income, Dennis could no longer afford monthly payments of $10,000 for the remainder of Larissa's life- payments he had made for many years. Coupled with the extreme and unanticipated events that occurred following the District Court's approval of the Agreement, it is clear that in effect the changed circumstances made the Agreement unconscionable.
¶ 32 The District Court thoroughly considered the very unique facts of this case and the findings are not clearly erroneous. The District Court did not abuse its discretion when it held the Agreement was unconscionable and modified it. The decision did not exceed the bounds of reason or create a substantial injustice.
¶ 33 2. Whether the District Court abused its discretion when it limited the amount of Larissa's attorney fees to those incurred during the contempt proceedings.
¶ 34 District courts are bound by attorney fee provisions within marital settlement agreements if the terms of the agreement are clear. In re Marriage of Cini , 2011 MT 295, ¶ 27, 363 Mont. 1, 266 P.3d 1257. Here, the Agreement states "In the event of future litigation between the parties to enforce, modify, or interpret any provision of this Agreement, the prevailing party shall be entitled to all of his or her court costs, including a reasonable attorney's fee." On appeal, Larissa argues that the District Court failed to abide by the Agreement and abused its discretion when it limited the award of attorney fees to those incurred during the contempt proceedings. Specifically, Larissa asserts she is entitled to attorney fees related to the bankruptcy proceedings in Arizona, and disputes the District Court's conclusion that the July 25, 2017 hearing addressed issues other than contempt.
¶ 35 The District Court did not abuse its discretion when it determined the amount of attorney fees awarded to Larissa. Larissa was the prevailing party in the contempt proceedings. However, Dennis was the prevailing party in proceedings involving modification issues and issues related to Dennis assigning his interest in a note payable to Larissa. Although Larissa quibbles about the timing of modification proceedings, the District Court looked at the proceedings of the case as a whole. The District Court awarded Larissa 75% of her proposed attorney fee amount because Dennis was the prevailing party in 25% of the proceedings. Further, the bankruptcy proceedings were separate proceedings. The Arizona bankruptcy judge did not order Dennis to pay attorney fees to any creditors, including Larissa. A review of the record does not reflect an abuse of discretion.
CONCLUSION
¶ 36 The District Court did not abuse its discretion in concluding continued imposition and enforcement of the parties' Agreement was unconscionable and its modification of the Agreement based on the parties' unique circumstances was appropriate. The District Court did not abuse its discretion in limiting Larissa's attorney fees.
¶ 37 Affirmed.
We Concur:
LAURIE McKINNON, J.
JAMES JEREMIAH SHEA, J.
BETH BAKER, J.
JIM RICE, J.
*1006 ORDER
On September 21, 2018, counsel for Appellant filed with this Court a petition for rehearing in the above-entitled matter. Appellee's objection to the rehearing request was filed on October 9, 2018. The Appellant's Petition for Rehearing has pointed out provisions in our original Opinion that are incorrect. Accordingly, the Court having considered the petition and objection,
IT IS ORDERED that Appellant's Petition for Rehearing is GRANTED.
IT IS FURTHER ORDERED that this Court's September 18, 2018 Opinion in DA 18-0067, In re the Marriage of: Larissa L. Simpson v. Dennis D. Simpson , 2018 MT 230, 2018 WL 4443188, is hereby WITHDRAWN and is replaced by the superseding Opinion issued herein.
/S/ MIKE McGRATH, C.J.
/S/ LAURIE McKINNON, J.
/S/ JAMES JEREMIAH SHEA, J.
/S/ BETH BAKER, J.
/S/ JIM RICE, J.

In Simpson I , this Court affirmed the District Court's conclusion that the $10,000 per month obligation in the Agreement was to be considered a portion of the property settlement.