FILED

06/17/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0371

DA 24-0371

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 127N

IN RE THE MARRIAGE OF:

JENNY LYNN CALDWELL,

      Petitioner and Appellee,

  and

BRANDON JAMES CALDWELL,

      Respondent and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDR-20-0490
Honorable John W. Parker, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Marybeth M. Sampsel, Measure Law, PC, Kalispell, Montana

      For Appellee:

          Trevor Carlson, Carlson Law, PLLC, Great Falls, Montana

                    Submitted on Briefs:  May 28, 2025

                            Decided:  June 17, 2025

Filed:

                    _____
                              Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Brandon James Caldwell appeals the District Court's final decree of dissolution of his marriage with Jenny Lynn Caldwell. Brandon claims that the court erred by failing to issue a final parenting plan for the parties' minor children and by allowing and relying on a second appraisal of the marital home that was not provided for in the parties' Property Settlement Agreement. Jenny agrees that the District Court improperly failed to enter a final parenting plan but argues that its decree otherwise should stand. We remand the case for entry of a final parenting plan in accordance with § 40-4-234, MCA, and affirm the Decree of Dissolution.

¶3     Brandon and Jenny were married in Colorado in 2008 and later moved to Montana. The parties separated in June 2020. Jenny filed a petition for dissolution a few months later, together with a proposed parenting plan for their three minor children.[1] The District Court entered its first interim parenting plan on December 7, 2020. Pending the final decree, the court would enter several subsequent orders on parenting matters, each time stating that its previous interim parenting plan otherwise would remain in effect.

---

[1] The oldest child has since turned eighteen.

¶4 Following a mediation on April 28, 2021, the parties reached agreement on the distribution of their assets and debts, memorialized in a written Property Settlement Agreement that they submitted to the District Court the next day. The notice of filing advised the court that they were unable to reach agreement with respect to parenting.

¶5 The parties agreed in the Property Settlement Agreement to divide equally their interests in two homes—a home they owned on 8th Avenue South in Great Falls and their marital home in Highwood. With respect to the Highwood property, the Property Settlement Agreement provided:

> Within thirty (30) days, the parties will agree on an appraiser for the property . . . . The parties will equally split the costs associated therewith. After the appraised value is determined: 1) the property will either be sold and the net proceeds equally divided, or 2) Brandon will decide whether he wants to buy out Jenny's half of the property. If Brandon wishes to purchase Jenny's half, then he will indicate as much, in writing, within ten (10) days of the appraisal. If Brandon elects to purchase Jenny's half of the property, he shall pay her her share and remove her name from any mortgages, deeds, etc. within sixty (60) days thereafter. The purchase price shall be determined by subtracting the existing mortgage balance and any costs and expenses associated with the sale from the appraised value.

The Agreement contained similar provisions regarding the Great Falls property—based on sale price rather than appraised value—and provided Jenny with the option to purchase Brandon's half of the property.

¶6 After several hearings and continuances, the parties appeared with counsel at what was designated a "final hearing" on August 30, 2021. During that hearing, the court declared the marriage dissolved, approved the Property Settlement Agreement, and set a deadline for exchange of personal property. The court took testimony on the parties'

3

proposals for a final parenting plan and directed each to submit their proposed findings of fact, conclusions of law, and parenting plans.

¶7 After the August 2021 hearing, the parties sold the Great Falls house in accordance with the Agreement when Jenny decided not to buy out Brandon's interest. On February 1, 2022, the District Court ordered the sales proceeds to be deposited with and held by the Clerk of District Court, pending issuance of the final decree, which would specify how the funds were to be divided between the parties.

¶8 In early July 2022, Brandon's counsel submitted notice to the court that included a "reminder" that the matter was ready for ruling, as the final hearing was completed the previous August, the parties had submitted their proposed findings, conclusions, and parenting plans, and the court was holding proceeds from sale of the Great Falls home. For reasons that are not entirely clear from the record, however, the District Court did not enter a final decree or parenting plan. Another "final hearing" was held in September 2023, and the final "final hearing" occurred on December 5, 2023.

¶9 In the meantime, on August 16, 2022, Jenny filed a motion seeking an additional appraisal of the Highwood property and a brief in support. She alleged that the initial appraisal, completed in September 2021, valued the property at $245,000, just $5,000 more than the price at which the parties bought the property in 2019. Because of the rise in Montana property values since that time and in light of improvements the parties made to the home, Jenny asserted that the property was substantially undervalued and that a second appraisal was warranted. Jenny submitted two affidavits from real estate professionals in

support of her allegations. She contended that a new appraisal was necessary in order for the property to be equitably divided, as the Property Settlement Agreement intended.

¶10 Brandon opposed the motion, arguing that a second appraisal would be contrary to the Property Settlement Agreement. He pointed out that the parties had agreed on the appraiser, the appraisal was conducted, and he exercised his option to purchase Jenny's interest in the Highwood property. Brandon represented that he paid Jenny her 50% interest of the amount determined, as specified in the Agreement, on December 3, 2021. He argued that Jenny could not now seek to modify the Agreement, which the court previously adopted, based on her dissatisfaction with the appraisal to which she had agreed.

¶11 The District Court held a hearing on December 19, 2022, to address Jenny's motion and another motion regarding parenting time. Over Brandon's objection, the court heard testimony from Andrew Long, a Highwood realtor involved in the parties' 2019 purchase, about his recent market analysis of the property. The court determined that, though Long was not an appraiser and would not be testifying to an appraised value of the property, he was qualified to discuss his market analysis, and his testimony would be relevant because, under the law, the court needed "to really have a solid understanding of the value of the assets" before entering a final decree. Long testified that, based on his analysis, the recommended price for the property at that time would be $437,277. The court overruled Brandon's further objection, stating: "I think we need to understand proper evaluation of these assets to ensure we're reaching the right conclusion under the family law statutes for property division." Again, citing *In re Marriage of Funk*, 2012 MT 14, 363 Mont. 352, 270 P.3d 39, and § 40-4-202, MCA, the court explained:

5

And subsection (1) of the statute provides that the Court shall finally equitably [apportion] between the parties the properties. And I just find, conclude, and order I can't equitably apportion it if there is a possible swing in evaluation of one or two hundred grand. I think we need more evidence on the point. So I think it's squarely before us under the laws of Montana. And I'm going to [overrule] the objection.

¶12 Jenny also called Brenda Nelson, a certified residential real estate appraiser, to testify to her review of the first appraisal. After an extensive voir dire and continued objections from Brandon's counsel, the court interjected:

So we've had a lot of argument about this now and looking at the language of [§] 40-4-202 given that the Court may equitably apportion properties, I find, conclude, and order the Court cannot equitably apportion this property when the evaluation is in question. And we don't -- I don't need an eight-hour fight over it. We're just getting into minutia here. I'm going to order that there shall be another appraisal.

The court agreed, however, to allow Brandon to present evidence from Joe Seipel, who conducted the first appraisal pursuant to the Property Settlement Agreement. When Mr. Seipel was unable to connect into the court via Zoom, the court concluded the hearing with a promise to set a new hearing in February, the next time its calendar would allow.

¶13 The court and parties reconvened on February 10, 2023, at which time Mr. Seipel testified to his 2021 appraisal and explained his disagreements with the opinions of Long and Nelson. Following argument from both counsel, the court granted Jenny's motion for the second appraisal, explaining its ruling from the bench:

I do find as a factual matter that the testimony from the prior hearing and from today calls into question economic value of the subject property. Section 40-4-202 requires the trial court to equitably apportion the property and assets of the parties. The Court cannot render an equitable distribution if the value of a very significant asset, like a home, is inaccurate.

6

Based on its review of *Marriage of Funk* and *In re Marriage of Simpson*, 2018 MT 281, 393 Mont. 340, 430 P.3d 999, the court concluded that it was required to make an accurate determination of value. It stated, "Separation agreements are binding on a court unless the court finds the agreement unconscionable after considering the parties['] economic circumstances. If this home is undervalued by 100 to 200,000 dollars that will not be an equitable result. If this house is overvalued, that won't yield the equitable result for [Brandon]." The court added that "there will not be any peace and finality if the home in this case is undervalued by 100 to 200,000 dollars." The court discussed with counsel a process for selection of another appraiser and directed them to proceed.

¶14    When the final hearing commenced on December 5, 2023, the parties presented additional testimony about the parenting dispute and evidence about the division of their personal property. The second appraisal had not yet been completed. At the conclusion of the hearing, Brandon's counsel said, "The other thing I think we have to look at is when is this case gonna [sic] be over?" She repeated Brandon's concern about the court having allowed a second appraisal and noted that it still was not finished. The court inquired whether the appraisal would be submitted after the hearing. After further back-and-forth between counsel about process, the court declared that it would impose a simultaneous deadline for each party to submit proposed findings and conclusions on the final parenting plan and property issues, along with a "two-to-three page point brief on housing evaluation and any supplemental exhibits[.]" The court advised that it would hold no more hearings and would not extend filing deadlines. Brandon's counsel confirmed that if the appraiser contacted him, Brandon would set up a time for them to come to the home.

7

¶15 Counsel for Jenny submitted a Notice of Filing on December 20, 2023, including the appraisal for the Highwood property conducted by John Buck. Buck valued the property at $462,000. Except for his proposed findings and conclusions, Brandon did not submit any further point brief or supplemental information on the property evaluation.[2]

¶16 The District Court entered its final decree on March 14, 2024. The Decree ordered the parties to comply with the Final Parenting Plan. The court did not, however, issue a final parenting plan. The District Court discussed the two appraisals and concluded that the parties' division of property under the Property Settlement Agreement was equitable. "However," it concluded, "incidents have occurred since that time that require an adjustment in the property distribution." One such adjustment concerned the parties' personal property, which is not at issue in this appeal. The second was the appraisal of the Highwood Property. The court found that the current value of the property is $462,000. It concluded that either Brandon must purchase Jenny's half interest or "the parties must sell the property and divide the proceeds."

¶17 Brandon moved to alter or amend the judgment, pointing out that the court did not enter a final parenting plan and arguing in part that the court should not have relied on the Buck appraisal because it was inadmissible hearsay and Buck did not testify. The motion was fully briefed and was deemed denied after the District Court did not rule on it within sixty days or extend the time for decision. M. R. Civ. P. 59(f). Brandon timely appealed.

---

[2] Brandon's Notice of Filing is in the record transmitted on appeal, but the proposed findings and conclusions are not.

¶18 "We review a district court's findings of fact, including those underlying a dissolution proceeding, parenting plan, and division of marital assets, to determine if they are clearly erroneous." *In re Marriage of Thorner*, 2008 MT 270, ¶ 20, 345 Mont. 194, 190 P.3d 1063 (citation omitted). "A finding is clearly erroneous if it is not supported by substantial evidence, the district court misapprehended the effect of the evidence, or our review of the record convinces us the district court made a mistake." *Marriage of Thorner*, ¶ 20 (citation omitted). "A district court's apportionment of the marital estate will stand unless there was a clear abuse of discretion as manifested by a substantially inequitable division of the marital assets resulting in substantial injustice." *Hutchins v. Hutchins*, 2018 MT 275, ¶ 7, 393 Mont. 283, 430 P.3d 502.

¶19 First, § 40-4-234, MCA, requires a court in every dissolution proceeding that involves a child to incorporate a final parenting plan into any final decree. The District Court appears simply to have overlooked this final step, as its decree included extensive findings and conclusions on parenting and ordered the parties to "follow the Final Parenting Plan." The case will be remanded for the court to adopt a final parenting plan on the existing record in accordance with its findings and conclusions.

¶20 Second, under § 40-4-201(2), MCA, a dissolution court is bound by an agreement between the parties regarding the disposition of their property "unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable." In such a case, the statute allows the court to "make orders for the disposition of property[.]" Section 40-4-201(3), MCA. With exceptions not

9

relevant here, the statute provides further that "the decree may expressly preclude or limit modification of terms set forth in the decree if provided for in the separation agreement." Section 40-4-201(6), MCA.

¶21 Brandon and Jenny's Property Settlement Agreement provided:

> The parties hereto understand and agree that all of the provisions of this Agreement are subject to the approval of the court having jurisdiction over this cause and that the said court may make such modification of this Agreement as it deems fit and proper.

It also provided:

> Both parties agree that this agreement and any decree of dissolution of their marriage incorporating this Agreement shall not be modified in any *future legal proceeding* under the authority of § 40-4-201(6), MCA. [Emphasis added.]

¶22 The Agreement called for the parties to divide the Highwood Property equally based on the "appraised value." Contrary to Brandon's argument, nothing in the parties' Agreement prohibited the District Court from considering a substantive review of the appraisal to satisfy itself that the Agreement met the statutory requirements and would result in an equitable apportionment of the marital estate. Section 40-4-202(1), MCA. In fact, the Agreement expressly allowed the court in the dissolution proceeding to "make such modification" as it deemed "fit and proper." During every record discussion of the matter, the court noted its obligation to accurately value and equitably distribute the property and expressed its concern about the potentially undervalued Seipel appraisal. It also allowed Brandon to present Seipel's testimony defending the appraisal and disputing Jenny's evidence that he had not valued the property accurately.

¶23 Brandon maintains, however, that the court could not simply adopt the Buck appraisal when Jenny submitted it after the final hearing, without an affidavit, and with no opportunity for cross-examination. Brandon raised these concerns in his Rule 59 motion but not before the court entered its decree. At the final "final hearing," the District Court expressly invited the parties to submit supplemental exhibits and point briefs on the property valuation; it told them on the record that it would hold no more hearings. Brandon's response was that he would make the house available to the appraiser. True, the appraisal did not get filed until the day before the court's final deadline, but Brandon submitted no objection, no point brief, and no supplemental exhibits of his own before the court entered its decree nearly three months later.

¶24 Upon review of the complete record, we are not persuaded that the District Court's use of the Buck appraisal warrants reversal. We do not condone the lengthy delay in bringing this matter to resolution. But the court nonetheless was obligated to determine a reasonable valuation of the property when it entered its decree. Although "[t]he time for proper valuation cannot be tied to any single event in the dissolution process[,]" it is preferable for property valuation to "occur at the time of distribution," and "present fair market values should be used." *In re Marriage of Krause*, 200 Mont. 368, 378-79, 654 P.2d 963, 968 (1982); *accord In re Marriage of Bartsch*, 2004 MT 99, ¶¶ 24-27, 321 Mont. 28, 88 P.3d 1263; *In re Marriage of Pospisil*, 2000 MT 132, ¶¶ 43-52, 299 Mont. 527, 1 P.3d 364. In the final analysis, the District Court exercised conscientious judgment in approving a final decree that "finally equitably apportion[ed] between the parties the property and assets belonging to either or both, however and whenever acquired[.]"

11

Section 40-4-202(1), MCA. To the extent that the court's acceptance of the Buck appraisal constituted a modification of the Property Settlement Agreement, its determination of unconscionability was not an abuse of discretion. *Marriage of Simpson*, ¶ 10.

¶25 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. With the exception of the parenting plan oversight, the District Court's rulings at issue are entitled to deference, and we conclude that the court did not abuse its discretion. Its March 14, 2024 Findings of Fact, Conclusions of Law, and Decree of Dissolution are affirmed. The case is remanded with instructions to the court to issue a Final Parenting Plan on the existing record in accordance with its Decree.

/S/ BETH BAKER

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M BIDEGARAY
/S/ INGRID GUSTAFSON
/S/ JIM RICE